Dear Mayor Perritt:
You have requested the opinion of this office regarding the constitutionality of a proposed zoning ordinance which would establish a zoning district wherein certain activities and structures would be prohibited. The ordinance would contain an "amortization" provision whereby a grace period would be allowed within which any prohibited structures in existence prior to the enactment of the ordinance must be removed. City Attorney Christian Lewis explained that the proposed zoning ordinance would deal specifically with the location of mobile homes and would allow for a set period of time (the length of which has not yet been determined) in which the owner could recoup his investment before removal would be required.
Mr. Lewis expressed the City's desire to draft an ordinance that will achieve the desired result and withstand constitutional scrutiny as well. Therefore, an opinion of this office is sought so as to delineate the constitutional parameters within which such an ordinance may be drawn.
The undersigned has found no Louisiana cases which address the issues presented by your opinion request. Although there may very well be other municipalities in this state which have enacted similarly styled ordinances, such have apparently either not been challenged, or if challenged, the case or cases never reached the appellate level. However, there are any number of federal and other state cases which have dealt with one form or another of zoning regulations containing amortization provisions.
The basic issue in both the federal and state cases which have evaluated the constitutionality of zoning ordinances containing amortization provisions has been whether the given ordinance's grace period for the elimination of a nonconforming use constituted a "taking" of property without just compensation. As will be demonstrated, this consideration goes beyond the mere presence or absence of such a provision within the zoning regulation.
The court in Georgia Outdoor Advertising v. City of Waynesville, 900 F.2d 783 (4th Cir. 1990) (Waynesville II), defined an "amortization provision" as follows:
 Simply stated, an amortization provision provides a period of time in which a new land use ordinance will not be enforced, during which time a property user either can make a use conform to the ordinance, or, if a user cannot or chooses not to conform, during which a user can recover all or a part of his investment before the use must be discontinued.
900 F.2d at 785. The court was quick to point out that the inclusion of an amortization provision in a zoning ordinance does not in and of itself cure any potential constitutional infirmities:
 Not only does the presence of an amortization provision fail to validate automatically a land use ordinance, the absence of a provision for compensation does not invariably render such an ordinance an unconstitutional taking.
Id. at 786.
Rather than attempting to formulate set guidelines regarding the constitutionality of zoning ordinances which contain amortization provisions, the courts have instead relied on the more general principles that have been established regarding what constitutes a taking.
Essentially, land use regulation can effect a taking under two circumstances: if the regulation does not substantially advance legitimate state (public) interests, or if the regulation denies an owner of economically viable use of his land. Keystone Bituminous Coal Association v. DeBenedictis, 480 U.S. 470,107 S.Ct. 1232, 94 L.Ed.2d 472 (1987); Agins v. Tiburon, 447 U.S. 255,100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). If the regulation does not substantially advance a legitimate interest, it can be declared invalid without further inquiry. Nollan v. California Coastal Commission, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677
(1987); Reahard v. Lee County, 968 F.2d 1131 (11th Cir. 1992), supplemented 978 F.2d 1212 (11th Cir. 1992).
The Supreme Court has not gone so far as to set clear guidelines as to when this first test is met. As the Court has stated:
 Our cases have not elaborated on the standards for determining what constitutes a `legitimate state interest' or what type of connection between the regulation and the state interest satisfies the requirement that the former `substantially advance' the latter. They have made clear, however, that a broad range of governmental purposes and regulations satisfies these requirements.
Nollan, 483 U.S. at 834, 107 S.Ct. at 3147. Although the undersigned has found no state or federal cases which deal specifically with this issue as regards the location of trailer parks, it is very possible that, based on various concerns, a zoning ordinance prohibiting the location of mobile homes in certain business and residential districts would be found to advance a legitimate interest of the municipality. These concerns might include aesthetics, as is the concern in a number of cases examining restrictions placed on the location of billboards. See, for example, Metromedia, Inc. v. San Diego, 453 U.S. 490,101 S.Ct. 2882, 69 L.Ed.2d 800 (1981); Naegele Outdoor Advertising, Inc., 844 F.2d 172 (4th Cir. 1988); and Major Media of the Southeast v. City of Raleigh, 792 F.2d 1269 (4th Cir. 1986). (It should be noted that, when a party makes a claim specifically for "just compensation," this first test is bypassed because such claims admit and assume that the subject regulation substantially advances a legitimate government interest. Reahard,968 F.2d at 1136.)
In the second prong of the takings test, the question becomes whether the ordinance denies the property owner of economically viable use of his property. First, it is necessary to determine exactly what unit of property is affected by the ordinance. The court in Keystone stated that:
 Because our test for regulatory taking requires us to compare the value that has been taken from the property with the value that remains in the property, one of the critical questions is determining how to define the unit of property `whose value is to furnish the denominator of the fraction.' (citation omitted)
In the case of a zoning ordinance restricting the location of trailer parks, the unit of property in question would seem to be clear: the parcel of land which at the time of the enactment of the zoning ordinance is being used for this specific purpose, i.e., the location of mobile homes.
The third step in this analysis thus becomes whether the ordinance in question denies the property owner of economically viable use of the appropriate unit of property. Naegele,844 F.2d at 176. This question is evaluated in light of three factors set forth by the Supreme Court in Penn Central Transportation Co. v. City of New York, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631
(1978), namely:
 (1) the economic impact of the regulation on the claimant;
 (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and
 (3) the character of the governmental action.
These factors, rather than being susceptible to determination by some set formula, are instead determined by ad hoc factual inquiries. Hodel v. Irving, 481 U.S. 704,107 S.Ct. 2076, 95 L.Ed.2d 668 (1987); Naegele, supra. In the course of such ad hoc factual determinations, the presence in a zoning ordinance of an amortization provision has been cited only as a favorable factor in finding that a property regulation does not constitute a taking:
 A majority of courts that have considered amortization periods of various lengths have approved them as a means of enabling an owner to recoup or minimize his loss.
Naegele, 844 F.2d at 177. However, as the court in Waynesville II makes clear:
 [A]mortization provisions cannot be viewed in isolation. Instead, amortization provisions are only `one of the facts that the district court should consider in defining the character of the government action. . . .'
900 F.2d at 786-787 (citing Naegele).
Necessary to any discussion of the validity of an ordinance affecting the ownership and use of private property in Louisiana is an examination of Article I, Section 4 of the Louisiana Constitution of 1974. section 2 of Article I provides that, "No person shall be deprived of life, liberty, or property, except by due process of law," essentially the language of Section 1 of the14th Amendment to the United States Constitution. However, our state constitution goes a step further in making this guarantee. Article I, Section 4 provides in pertinent part:
 Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
 Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner. . .
In State v. 1971 Green GMC Van, 354 So.2d 479 (La. 1977), the Louisiana Supreme Court explained the purpose behind this provision:
 Article I, section four of our Constitution was intended to give `far-reaching new protection' to the right of citizens to own and control private property. Its language goes beyond other state constitutions, including our 1921 Constitution, and the federal constitution in limiting the power of government to regulate private property. (citations omitted)
354 So.2d at 486.
Nevertheless, Section 4 provides that an individual's right in private property is subject to reasonable restrictions and the reasonable exercise of the state's police power. The question of what constitutes a reasonable use of the police power in the area of zoning was recently addressed by the Fifth Circuit in SDJ, Inc. v. City of Houston, 1837 F.2d 1268 (5th Cir. 1988):
 [T]he `legislative' exercise of police power, in an area such as zoning, is subject to deferential review. An inquiry into the actual purposes of a zoning regulation is a difficult and intrusive undertaking for the courts. Ordinarily a zoning regulation comports with due process if `there was any possible rational basis for legislation.' This deference serves the interests of federalism and relatedly, reflects the limits of the judicial role. . . . [T]he police power of a municipality is broad and includes restricting the uses of property.
837 F.2d at 1273, 1278.
Louisiana courts addressing takings in the context of zoning regulations and the police power have been in accord with the federal courts. The essential test is whether the exercise of the governmental entity's police power is arbitrary and unreasonable. In Trustees Under the Will of Pomeroy v. Town of Westlake, 357 So.2d 1268 (La.App. 3d Cir. 1978), the court addressed this issue as follows:
 The burden is on one seeking to overturn the action of a zoning authority to establish an unreasonable and arbitrary exercise of police power without any substantial relationship to the general welfare.
This reflects the deferential attitude towards the exercise of the police power in the area of zoning regulations that is discussed in SDJ, Inc. v. Houston.
Once again, it must be noted that such determinations in the context of zoning ordinances involve highly fact-based inquiries, and careful consideration should be given to the overall effects that any proposed zoning ordinances will have. As the court in Waynesville II explained:
 [A] court cannot determine whether a regulation has gone `too far' unless it knows how far the regulation goes. . . . `[T]his is a question of degree and therefore cannot be disposed of by general propositions.' . . . . It is only after a detailed factual examination, therefore, that a court in the ordinary case properly should ascertain whether a regulation effects a taking. (citations omitted)
900 F.2d at 789.
I hope that the authorities cited above will offer guidance in any future action the City decides to take regarding this matter. Please do not hesitate to contact this office if you require further assistance.
Sincerely,
 Richard P. Ieyoub Attorney General
 By: Angie Rogers LaPlace Assistant Attorney General