**Richard REAHARD; Ann P. Reahard,**
**Plaintiffs–Appellees,**

v.

**LEE COUNTY, Defendant–Appellant.**

No. 91–3593.

United States Court of Appeals,
Eleventh Circuit.

Aug. 14, 1992.

---

**4.** Of course, resentencing is not necessarily the right remedy for the violation the majority finds.

John J. Renner, Asst. Lee County Atty., Fort Myers, Fla., Robert N. Reynolds, Miami, Fla., Helena Schwartz, Atty. Gen., Special Projects Div., Jonathan A. Glogau, Tallahassee, Fla., for defendant-appellant.

Melissa P. Anderson, Ft. Lauderdale, Fla., (amicus) for Broward County.

Garvin & Tripp, P.A., Jeffrey Richard Garvin, Theodore L. Tripp, Ft. Myers, Fla., for plaintiffs-appellees.

Gibson & Lilly, Robin Gibson, Lake Wales, Fla., for 1000 Friends of Florida, Inc., amicus.

Thomas W. Reese, St. Petersburg, Fla., for RGMC and COTI amici.

John J. Dingfelder, Tampa, Fla., for Florida Ass'n of Counties and Florida Ass'n of County Attorneys amici.

William H. Ethier, Washington, D.C., amicus for National Assn. of Home Builders.

Joseph J. Gleason, V-P, Staff Legal Counsel, Lakeland, Fla., for Florida Citrus Mutual amicus.

G. Stephen Parker, President, Deborah A. Ausburn, The Southeastern Legal Foundation, Inc., Atlanta, Ga., amicus for Southeastern Legal Foundation, Inc.

Hart, Fuller & Smith, P.A., Marty Smith, Ocala, Fla., Florida Dairy Farmers, Inc., Fla. Land Council, Fl. Farm Bureau Federation & FL Cattlemen's Ass'n amici.

Robin L. Rivett, Pacific Legal Foundation, Sacramento, Cal., for Pacific Legal Foundation, amicus.

Leonard A. Leo, Nancie G. Marzulla, Defenders of Property Rights, Washington, D.C., for Defenders of Property Rights, amicus.

Before FAY and BIRCH, Circuit Judges, and DYER, Senior Circuit Judge.

FAY, Circuit Judge:

Appellant Lee County, a political subdivision of the State of Florida, appeals a magistrate judge's order finding that the adoption of the Lee County Comprehensive Land Use Plan resulted in a taking of Appellees Richard and Ann Reahard's property under the Fifth and Fourteenth Amendments to the United States Constitution. Because the magistrate judge misapplied the legal standard for partial takings and failed to make adequate factual findings, we VACATE the order and REMAND for new proceedings consistent with this opinion.

## I. BACKGROUND

This case concerns roughly forty acres of waterfront land located in Lee County, Florida, with direct river access to the Gulf of Mexico. These forty acres were once part of a larger parcel of approximately 540 acres that were purchased in 1944 by the parents of the plaintiff, Richard Reahard. Through the mid–1970's, the Reahard family subdivided, developed, and sold tracts of the 540 acre parcel, retaining the approximately forty acres at issue. Richard Reahard, who inherited the site in November of 1984, sought to continue development of the site as a single-family subdivision. In December of 1984, however, the Lee County Comprehensive Land Use Plan ("Lee Plan") went into effect and classified the Reahard's property as a Resource Protection Area ("R.P.A."). This designation limited development of the parcel to a single residence, or for uses of a "recreational, open space, or conservation nature." (Pl.Ex. 9–A).

On September 1, 1989, Reahard[1] filed a complaint in the Twentieth Judicial Circuit Court of the State of Florida alleging that Lee County's designation of his property as an R.P.A. in the Lee Plan was a valid exercise of Lee County's police power but constituted a taking under sections 163.-3194(4)(b) and 380.08 of the Florida Statutes, under Article X, Section 6 of the Florida Constitution, and under the Fifth and Fourteenth Amendments to the United States Constitution. Lee County answered the complaint and affirmatively alleged that Reahard failed to exhaust administrative remedies, that the claim was not ripe for adjudication, and that the claim was barred by the statute of limitations. Following the filing of a petition for removal by Lee County, the case was removed from state court to federal court.

The parties agreed to have the matter heard before a United States magistrate judge.[2] The issues of liability and damages were bifurcated. The non-jury trial on liability, or on whether a taking had occurred, began on November 26, 1990 and concluded on November 28, 1990.

During the trial numerous witnesses were called, including Richard Reahard, representatives of Lee County, the Florida Department of Environmental Regulation ("DER"), and the Army Corps of Engineers, land use planners and consultants, and property appraisers. Evidence was introduced concerning the initial title acquisition of the subject property, e.g., (R10:60, 95–96), the property's history of subdivision, sale, and development, e.g., (R10:96–98, 117, 120–23), the record of permitting, e.g., (R10:82, 102, 125–26; Pl.Ex. 17, 22), how and when Reahard inherited the land, e.g., (R10:60, 82), the topography and extent of the property, e.g., (R10:65–67), the site's history of zoning and regulation, e.g., (Pl.Ex. 9–A; Def.Ex. 1–A), value appraisals after the enactment of the Lee Plan, e.g., (R11:274), development of similarly designated "wetland" areas, (R11:215–16), and the Reahard's investment expectations, e.g., (R10:87).

Much of this evidence was in dispute[3] and nearly all of it relevant to whether a taking had occurred. Despite the complexity of the evidence, however, the magistrate judge, in an order issued on January 16, 1991, limited his factual findings to the following:

> 1. No cause of action arose in the case until January 31, 1989, when Lee County finally denied Plaintiff's application for plan amendment, and therefore, the four year Statute of Limitations did not begin running until that date.

---

**1.** Richard Reahard's wife, Ann Reahard, was added as a party after the filing of this action.

**2.** Parties may consent to have a United States magistrate judge "conduct any or all proceedings in a jury or non-jury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves," pursuant to 28 U.S.C. § 636(c)(1).

**3.** For example, the parties disputed whether DER would have issued permits for development, the extent to which the R.P.A. classification affected the reasonable economic use of the land, and the value of the property after the enactment of the Lee Plan.

2. There was no vesting of any property rights due to any official affirmative act or omission on the part of Defendant, Lee County, or its agents, such as would have entitled Plaintiffs to exemption from the operation of the Lee County Comprehensive Land Use Plan, hereinafter referred to as the "Lee Plan." Because there was no official affirmative acts or omissions on the part of Lee County, any application under the vested rights provision of the Lee Plan would have been futile.

3. Plaintiffs have filed an application for amendment to the Lee Plan, an application for administrative determination of error, and an application under the minimum use or single family residence provision of the Lee Plan and, as a result, have exhausted all administrative remedies.

4. Defendant, Lee County, upon application by the Plaintiffs, has entered a development order permitting the Plaintiffs to place one (1) single family unit on the approximately 40–acre tract which is the subject of this litigation. Development of some of the property could have occurred were it not for the enactment of the Lee Plan and subsequent development order.

5. As a result of the adoption of the Lee Plan, there was a substantial deprivation of the value of Plaintiffs' property resulting in a taking of Plaintiffs' property with the loss of use to Plaintiffs dating back to the effective date of the County's adoption of the Lee Plan on December 21, 1984.

(R5:56–1–3).

Immediately after entry of these findings, Lee County appealed directly to this court.[4] The appeal was dismissed as premature pending determination of damages, which subsequently went to trial before a jury on May 7, 1991. Two weeks later, on May 21, 1991, the jury returned a verdict in favor of the Reahards for $700,000, plus interest at 6.07% accrued from December 21, 1984. The final judgment was amended on June 6, 1991 to award interest at 12% and to require the Reahards to execute and deliver to Lee County a fee simple deed conveying their interest in the subject property to Lee County.

Lee County once again appealed directly to this court. We issued an order advising the parties that we would await the Supreme Court's review of *Lucas v. South Carolina Coastal Council*, 304 S.C. 376, 404 S.E.2d 895, *cert. granted*, —— U.S. ——, 112 S.Ct. 436, 116 L.Ed.2d 455 (1991), before deciding this appeal. As the Supreme Court has recently ruled in *Lucas v. South Carolina Coastal Council*, —— U.S. ——, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), *reversing*, 304 S.C. 376, 404 S.E.2d 895 (1991), we address the present appeal.[5]

## II. DISCUSSION

The magistrate judge's order of January 16, 1991 cannot stand because it misapplies the legal standard regarding partial takings and wholly fails to set forward factual findings necessary to support a decision that a taking has occurred.

Recently, in *Eide v. Sarasota County*, 908 F.2d 716 (11th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991), we identified four types of taking challenges that a land own-

---

**4.** Under 28 U.S.C. § 636(c)(3), "an aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate in the same manner as an appeal from any other judgment of a district court."

**5.** Although we awaited the release of *Lucas*, the Court left open how the categorical takings rule set forth in its opinion applies to situations in which a part of a landowner's property is rendered unusable by a regulation. *See* —— U.S. at —— n. 8, 112 S.Ct. at 2895 n. 8 ("Such an owner [whose land diminishes in value by 95%] might

not be able to claim the benefit of our categorical formulation, but, as we have acknowledged time and again, '[t]he economic impact of the regulation on the claimant and ... the extent to which the regulation has interfered with distinct investment-backed expectations' are keenly relevant to takings analysis generally. It is true that in at least *some* cases the landowner with 95% loss will get nothing, while the landowner with total loss will recover in full." (quoting *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978)).

er may bring: (1) just compensation claims; (2) due process takings claims; (3) arbitrary and capricious due process claims; and (4) equal protection claims. *Id.* at 720. This challenge falls within the first category: a claim for just compensation. In *Eide*, we noted that a just compensation claim, as opposed to the other types of claims, does not seek "an invalidation of the local authority's application of the regulation," *id.* at 721, but simply monetary compensation for the value taken. In his complaint, Reahard conceded that "[t]he action of Lee County in classifying Plaintiff's land as Resource Protection Area is a valid exercise of the police power of Lee County." [6] (R1:1 "Complaint and Demand for Jury Trial" at 3). He asserts, however, that the R.P.A. designation sufficiently interfered with his reasonable investment-backed expectations that monetary compensation is warranted.

■ The question inherent in a "just compensation" claim is whether the regulation goes so far as to be a taking.[7] *See Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922) ("The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking."). Admittedly, there has been much confusion as to when a regulation goes too far in a partial takings case. In *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), the Supreme Court recognized that it has been "unable to develop any 'set formula' for determining when 'justice and fairness' require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons." *Id.* at 124, 98 S.Ct. at 2659. Instead, the Court held that takings decisions depend largely upon the particular circumstances in each case and that each case is to be decided on an ad hoc, factual basis. *Id.*

■ The ad hoc inquiry requires no more than an application of the law to the peculiar facts. In *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), the Supreme Court restated two tests to be used in analyzing takings claims. The first test is whether a particular regulation substantially advances a legitimate state interest. 483 U.S. at 834, 107 S.Ct. at 3147; *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980). If the regulation does not substantially advance a legitimate state interest, it can be declared invalid. The second test is whether a regulation denies an owner economically viable use of his property. 483 U.S. at 834, 107 S.Ct. at 3147; 447 U.S. at 260, 100

---

**6.** The Reahards now argue that "there is no evidence that the proposed development of this property by Mr. and Mrs. Reahard would cause any substantial harm [sic] the public, generally, or the environment, in specific," Brief for Appellees at 15, thus raising the factual issue of whether the R.P.A.'s application substantially advanced legitimate state interests. We will not consider this issue as it is raised for the first time on appeal. *Pierre v. United States*, 525 F.2d 933, 936 (5th Cir.1976).

**7.** The threshold question, of course, is whether the just compensation claim is ripe for review. As we made clear in *Eide*,

[i]n order for such a claim to be ripe for adjudication, the landowner must overcome two hurdles: the final decision hurdle and the just compensation hurdle. The landowner must obtain a final decision regarding the application of the zoning ordinance or regulation to his or her property and utilize state procedures which provide for obtaining just compensation. The final decision requirement includes a requirement that the property owner seek variances from the applicable regulations. The reason for the final decision requirement is that one of the factors significant to the adjudication of a just compensation claim is "the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations." This impact and interference cannot be ascertained until the local authority has determined the nature and extent of the development that will be permitted. In addition to the final decision requirement, a Fifth Amendment just compensation claim is not ripe until the landowner has pursued the available state procedures to obtain just compensation.

908 F.2d at 720–21 (citations omitted).

Here, the magistrate judge found that the Reahards exhausted all administrative remedies prior to their just compensation claim. (R5:56 at 2).

S.Ct. at 2141. In *Nollan*, the Court found that the California Coastal Commission's imposition of an access-easement condition failed the first test and thus violated the takings clause. 483 U.S. at 835–39, 107 S.Ct. at 3147–50. The Court did not reach the second test.

■■■ Here, the first test set forth in *Nollan* is bypassed because a claim for "just compensation" (the first type of claim identified in *Eide*) necessarily involves a regulation that substantially advances a legitimate government interest. Just compensation claims admit and assume that the subject regulation substantially advances a legitimate government interest; the validity of the regulation is not at issue. Thus, given no claim that state common law would permit particular use restrictions without compensation, the only issue in just compensation claims is whether an owner has been denied all or substantially all economically viable use of his property. *See Eide*, 908 F.2d at 721; *see also Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005, 104 S.Ct. 2862, 2874, 81 L.Ed.2d 815 (1984) (recognizing that governmental action "so complete as to deprive the owner of all or most of his interest" can amount to a taking) (quoting *United States v. General Motors Corp.*, 323 U.S. 373, 378, 65 S.Ct. 357, 359, 89 L.Ed. 311 (1945)).

■ In order to resolve the question of whether the landowner has been denied all or substantially all economically viable use of his property, the factfinder must analyze, at the very least: (1) the economic impact of the regulation on the claimant; and (2) the extent to which the regulation has interfered with investment-backed expectations. *Bowen v. Gilliard*, 483 U.S. 587, 606, 107 S.Ct. 3008, 3019, 97 L.Ed.2d 485 (1986); *Hodel v. Irving*, 481 U.S. 704, 713–14, 107 S.Ct. 2076, 2081–82, 95 L.Ed.2d 668 (1986); *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 516, 107 S.Ct. 1232, 1258, 94 L.Ed.2d 472 (1986); *MacDonald, Sommer & Frates v. County of Yolo*, 477 U.S. 340, 348–49, 106 S.Ct. 2561, 2565–66, 91 L.Ed.2d 285 (1986); *Lor-*

etto *v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426, 102 S.Ct. 3164, 3171, 73 L.Ed.2d 868 (1981); *Kaiser Aetna v. United States*, 444 U.S. 164, 174–75, 100 S.Ct. 383, 389–390, 62 L.Ed.2d 332 (1979); *Penn Central*, 438 U.S. at 124, 98 S.Ct. at 2659; *see Baytree of Inverrary Realty Partners v. City of Lauderhill*, 873 F.2d 1407, 1410 (11th Cir.1989). This analysis must be explored in light of developing case law that has shaped and defined the meaning of these factors.

■ In the instant case, the magistrate judge, serving as factfinder,[8] did not analyze the factors noted above, nor did he set forth factual findings necessary for such an analysis. In this context, a proper takings analysis would address a number of questions. In this case, those questions are: (1) the history of the property—when was it purchased? How much land was purchased? Where was the land located? What was the nature of title? What was the composition of the land and how was it initially used?; (2) the history of development—what was built on the property and by whom? How was it subdivided and to whom was it sold? What plats were filed? What roads were dedicated?; (3) the history of zoning and regulation—how and when was the land classified? How was use proscribed? What changes in classifications occurred?; (4) how did development change when title passed?; (5) what is the present nature and extent of the property?; (6) what were the reasonable expectations of the landowner under state common law?; (7) what were the reasonable expectations of the neighboring landowners under state common law?; and (8) perhaps most importantly, what was the diminution in the investment-backed expectations of the landowner, if any, after passage of the regulation? Once such facts are determined, an application of these facts under the *Penn Central* multifactor inquiry would follow. Here, the magistrate judge simply concluded, without any findings or analysis, that "[a]s a result of the adoption of the Lee Plan, there was a substantial

---

**8.** We note, of course, that had this matter been before a jury, the relevant inquiry would have concerned whether the instructions properly charged the jury.

deprivation of the value of Plaintiffs' property resulting in a taking." (R5:56 at 2).

Given the lack of both factual findings and a takings analysis in accord with case precedent, we VACATE the judgment and REMAND this case for new proceedings consistent with this opinion.[9]

---

9. During the pendency of this appeal, Lee County filed a motion to dismiss based upon mootness noting that it had filed a condemnation case in state court. Our inquiry resulted in being advised that the condemnation case was "pending." We suggest that the magistrate judge make appropriate inquiry regarding such

litigation. If such an action has been *completed*, this case would be moot.