United States Court of Appeals,

Eleventh Circuit.

No. 95-4351.

Herman CORN, Plaintiff-Appellant,

v.

CITY OF LAUDERDALE LAKES, Howard Craft, Alfonso Gereffi, Jerome Cohan, Morris Klein, Lyman L. Allen, Louis Greenwald, Harry Kaufman, Defendants-Appellees.

Sept. 23, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 84-6034-CIV-JCP), James C. Paine, Senior District Judge.

Before COX and BARKETT, Circuit Judges, and BRIGHT[*], Senior Circuit Judge.

COX, Circuit Judge:

On this appeal, we address for the fourth time a 20-year-old dispute between Herman Corn and the City of Lauderdale Lakes, Florida (the "City"), over the City's refusal to allow Corn to build a mini-warehouse on his property. Corn alleges that the City's actions effected a taking of his property entitling him to just compensation. The district court held that there was no taking of Corn's property. We affirm in part, but must vacate and remand in part for the district court to make further factual findings.

I. FACTS[1]

---

[*]Honorable Myron H. Bright, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

[1]A more detailed description of this litigation appears in our opinion in *Corn v. City of Lauderdale Lakes,* 997 F.2d 1369 (11th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 1400, 128 L.Ed.2d 73 (1994).

A. *The Property and Proposed Development*

In 1966, Corn purchased 261 acres of land in an unincorporated area of Broward County, Florida. After negotiations with the City about annexation of the land, Corn submitted a proposed development plan. Before annexing Corn's land, the City created a new C-1A zoning category, incorporating the permissible uses in the existing C-1 category and requiring that a site development plan be submitted before building permits would be issued. By ordinance, the City then formally annexed Corn's land. By separate ordinance, Ordinance No. 105, the City zoned Corn's land. Approximately 8.5 acres were zoned C-1A, while Corn's adjacent land was zoned for residential use.

Between 1966 and 1977, Corn developed much of the land according to the development plan originally submitted to the City. His development expenditures exceeded $100,000. The district court found that Corn did not prove that these expenditures were aimed at any specific use of the land, as opposed to general commercial preparation. On the portion of his land zoned residential, Corn first built single family residences and then condominiums. In April 1977, Corn submitted a preliminary site plan (the "Site Plan") proposing to construct a 67,000 square foot shopping center and a 900-unit, 103,000 square foot mini-warehouse on the land zoned C-1A (the "Parcel"). At the time, both uses were permitted on land zoned C-1 and, hence, on land zoned C-1A.

Before building his mini-warehouse, Corn had to obtain the approval of the City Council. The City's Planning and Zoning Board twice recommended that the City Council approve the Site Plan. The

City Council heard from Corn as well as city residents opposing the mini-warehouse project at three public meetings, tabling consideration of the Site Plan at each meeting.

B. *The Re-Zoning Ordinances and Moratorium*

Before voting on the Site Plan, the City Council eliminated mini-warehouses as a use permitted on C-1A property. At a public meeting attended by Corn's attorney, the City Council passed Ordinance No. 548, eliminating mini-warehouses as a permitted use on C-1 (and consequently C-1A) land. The City Council also passed Ordinance No. 549, re-zoning the Parcel to category B-3, a more restrictive zoning category. Then the City Council voted unanimously to deny approval of the Site Plan.

The City Council also passed Ordinance No. 552, imposing a moratorium on the issuance of building permits for C-1 property to allow the Planning and Zoning Board to conduct a study of the City's zoning scheme. In particular, the study was to address the propriety of situating commercially zoned property adjacent to residential property. Originally, the moratorium was to last for 150 days, but it eventually was extended to last almost a year.

The record is ambiguous as to whether the moratorium applied to Corn's property for its entire duration. By its terms, Ordinance No. 552 applied to C-1 property; the Parcel, however, was re-zoned B-3 by Ordinance No. 549 within a month of the moratorium's inception. The parties have proceeded on this appeal under the assumption that the moratorium nevertheless applied to the Parcel for its duration and prevented Corn from building anything on the Parcel during that time. It is clear that once the

moratorium expired on July 4, 1978, the Parcel's B-3 zoning classification permitted many uses, including the proposed shopping center, though not a mini-warehouse.

C. *The State Court Litigation*

In August 1977, Corn filed suit in state court, challenging the City's denial of his Site Plan and the validity of Ordinance No. 548 (prohibiting storage warehouses on C-1 property), Ordinance No. 549 (re-zoning Corn's parcel from C-1A to B-3), and Ordinance No. 552 (imposing the moratorium). The state circuit court found that Corn had "certain vested rights in the zoning classification C-1A ... as applied to [the] property by Ordinance # 105" and that the City "is estopped to deny [Corn's] rights in such zoning classification." (R. 1, Ex. O at 14.) The court held that Ordinance No. 548, Ordinance No. 549, and Ordinance No. 552 were "void and unenforceable" as against Corn or the property because, in passing the ordinances, the City failed to follow its own notice and procedural requirements. (*Id.* at 13.) The court ordered the City to approve Corn's Site Plan when three deficiencies were corrected, (*id.* at 14), and to issue Corn building permits, (*id.* at 15).

The state circuit court's judgment was stayed while the City pursued an appeal. In February 1983, the state court of appeals affirmed the circuit court's judgment, finding that substantial evidence supported the circuit court's order equitably estopping the City from denying approval of the Site Plan. *City of Lauderdale Lakes v. Corn,* 427 So.2d 239, 243 (Fla.Dist.Ct.App.1983). Seven months after the appellate court's

mandate issued, Corn submitted a revised site plan to the City. The City Council refused to approve the plan unless Corn platted the property, as required by a Broward County platting requirement enacted since the original Site Plan was submitted.

A year later, Corn filed in the state circuit court a "Motion to Enforce Final Judgment," requesting an order requiring the City unconditionally to approve the revised site plan and issue a building permit without Corn platting the property.  The City did not oppose the motion and, in March 1985, the state court granted Corn relief from the platting requirement.  Finally allowed to build his mini-warehouse project, Corn decided not to do so. Instead, he has prosecuted this § 1983 action in federal court for the last twelve years.

## II. PROCEDURAL BACKGROUND

In 1984, Corn filed this action under 42 U.S.C. § 1983 against the City, the Mayor, the members of the City Council, and the City Building Official.  In Count One of his complaint, Corn alleges a taking of his property without just compensation in violation of the Fifth and Fourteenth Amendments.[2]  In Count Two, Corn alleges that the City's refusal to approve the Site Plan and issue building permits violated his substantive due process rights.  Before trial, Corn dismissed Count Three, alleging procedural due process violations, and Count Four, alleging an equal protection violation.

The district court dismissed Corn's complaint on ripeness

---

[2]The Fifth Amendment's protections apply to the states through the Fourteenth Amendment. *See Chicago, B. & Q.R. Co. v. City of Chicago,* 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897). For ease of reference, we refer to Corn's claim as a Fifth Amendment claim throughout this opinion.

grounds under *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). This court reversed and remanded. *Corn v. City of Lauderdale Lakes,* 816 F.2d 1514 (11th Cir.1987). On remand, the City moved for summary judgment based on res judicata and the statute of limitations. The district court denied the City's motion but certified its order for interlocutory appeal under 28 U.S.C. § 1292(b). We granted permission to appeal and affirmed the denial of summary judgment. *Corn v. City of Lauderdale Lakes,* 904 F.2d 585 (11th Cir.1990). The case was remanded for trial.

After a bench trial, the district court found that the City had acted arbitrarily and capriciously in denying approval of the Site Plan. The court held that the denial violated Corn's substantive due process rights and awarded Corn $727,875.02 in damages. The court reserved judgment on the Fifth Amendment just compensation claim (Count One), finding that damages would be the same as on the substantive due process claim. Not satisfied with the damages award or the district court's dismissal of individual members of the City Council from the suit, Corn appealed. The City cross-appealed.

We reversed, holding that the district court erred in concluding that Corn's substantive due process rights were violated. *Corn v. City of Lauderdale Lakes,* 997 F.2d 1369. Our painstaking review of the record revealed that Corn had failed to prove that the City had acted arbitrarily and capriciously. *Id.* at 1373. Indeed, the record affirmatively showed that the City's decision to prevent Corn from building the 900-unit mini-warehouse

in a residential area was substantially related to the general welfare. *Id.* We did not address the other component of the substantive due process claim: whether Corn was deprived of any constitutionally protected property interest. *Id.* at 1374. Because the district court had not ruled on the just compensation claim, we remanded for further proceedings. *Id.* at 1393.

The City and Corn agreed that the district court did not need to conduct a new trial on the just compensation claim. After receiving status reports from the parties, the district court entered its Findings of Fact and Conclusions of Law Upon Remand. The court framed the issue as "whether CORN's property (either his interest in the land or in the development project) has been taken without just compensation by virtue of the CITY's ordinances and actions ..." (R. 273 at 10.) As to whether Corn's interest in the land had been taken, the court engaged in an *ad hoc* analysis of whether the City's ordinances and actions went "too far" and denied Corn all or substantially all economically viable use of his land. (*Id.* at 13-14 (citing *Reahard v. Lee County,* 968 F.2d 1131 (11th Cir.1992)).)

In analyzing whether the City went too far, the court made the following findings as to Corn's reasonable investment-backed expectations:

> In 1977, having attempted no use of the Subject Property for 11 years, CORN submitted his first preliminary site plan for development of the Subject Property and proposed for the first time, construction of mini-warehouses. By that time, he had completed his build-out of the residential parcels and the Subject Property where the mini-warehouses were to be constructed was, quite literally, in the back yard of residents who had purchased their homes from him. By that time, the use CORN proposed to make of the Subject Property (i.e. construction of a 900 unit mini-warehouse) was contrary

to the general welfare concerns about congestion, noise, traffic, aesthetics, safety, and property values. *See Corn* 997 F.2d at 1386. There was no evidence presented that the construction of mini-warehouses was ever CORN's primary expectation for the Subject Property or that he had invested in items specifically suited for a single development project that were rendered unusable, or render the Subject Property unusable, for any other purpose for which it could have been developed. Any expectations CORN may have had regarding use of the Subject Property are not backed by any investment other than his original purchase. Further, because the property remained suitable for business development it cannot be said on this record that CORN suffered a diminution in investment-backed expectations.

(*Id.* at 15-16.)

As to the economic impact of the City's ordinances and actions on Corn's property, the court found:

the fact that the stated purpose of Ordinance 552 was to permit the Planning and Zoning Board to review the CITY's commercial zoning scheme in light of its previous suggestion that all C-1 property abutting residential property should be rezoned, is relevant to this court's finding that Ordinance 552 did not go too far. The ordinance initially effected a reasonable 150 day building moratorium on development of all commercial property in the CITY. While the duration of the moratorium was later extended, it cannot be said, in light of the need to satisfy the reasonable purpose of the ordinance and the length of time that CORN's property lay dormant before the enactment of it, that the duration of the moratorium was unreasonable. It further cannot be said that either the moratorium ordinance or the rezoning ordinances which limited CORN's use of the Subject Property to business, a more restrictive use than commercial, rendered CORN's property "wholly useless." It further cannot be said CORN was deprived of all "economically viable use," thereby requiring that he be compensated by the CITY. The ordinances went far enough to serve their stated purposes but not so far as to justify CORN's just compensation claim.

(*Id.* at 17.) Thus, the court held that the ordinances did not effect a taking of Corn's property interest in the Parcel. (*Id.* at 17-18.)

Turning to whether there was a taking of Corn's property with respect to the proposed development project (the "Project"), the court first analyzed whether Corn had any property interest in the

Project. (*Id.* at 18.) The court held that Corn had no property interest in the Project:

> [E]specially considering the fact that even the pre-existing zoning category C-1 required CORN to obtain approval of the CITY before developing his land, the undersigned concludes that the ordinances in question never created a reasonable expectation in CORN which rose to the level of a property interest in the development of his commercial project. It simply cannot be said on this set of fact, that the CITY's application of the ordinances and other actions deprived CORN of a legitimate claim of entitlement. CORN never had an unbridled right to develop his property in any way he so chose so long as it was merely consistent with the zoning requirement. Because the CITY had never granted to CORN an entitlement to freely develop the property without its prior approval, CORN does not have a protected property interest in the commercial development project.

(*Id.* at 20-21.) Thus, the court entered judgment for the City on Corn's just compensation claim. Corn appeals.

### III. ISSUES ON APPEAL

We address two issues on this appeal: (1) whether the district court erred in finding that there was no taking of Corn's property interest in the Parcel; and (2) whether the district court erred in finding that Corn had no property interest in the Project.[3]

### IV. CONTENTIONS OF THE PARTIES

Corn argues that because the state circuit court held that the City could not validly apply the ordinances to the Parcel, the ordinances necessarily went "too far" and thus effected a taking.

---

[3]Corn also contends that, in light of subsequent Supreme Court precedent, we should revisit our holding on Corn's last appeal. According to Corn, under the Supreme Court's decision in *Dolan v. City of Tigard,* 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994), we applied the wrong standard in rejecting Corn's substantive due process claim. Corn's contention is meritless. *Dolan* did not address the type of substantive due process claim asserted by Corn.

Alternatively, Corn contends that the City deprived him of all economically viable use of the Parcel by rejecting the Site Plan, imposing the moratorium, appealing the state court judgment, and insisting that Corn plat the property. During the moratorium, he argues, all building or development on the Parcel was prohibited. Corn concedes that, after the moratorium, he could develop the Parcel for many other purposes, but contends that he had no legal obligation to do so. Since he could not build the Project until March 1985, and had no obligation to use the Parcel in any other way, Corn argues that he was deprived of all economically viable use of the Parcel until March 1985. By that time, Corn argues, the Project no longer was commercially practicable, and the alleged taking thus matured into a permanent taking.

The City responds that the district court correctly determined that Corn was not deprived of all economically viable use of the Parcel. The City notes that Corn does not dispute that the Parcel could be used for many purposes other than building a mini-warehouse. The City argues that the district court correctly found that the moratorium did not effect a taking because it lasted only as long as necessary to study the commercial zoning scheme.

Corn also contends that the City's denial of permission to build the Project constituted a taking of the Project. Corn grounds this argument on the state circuit court's holding that he had certain vested rights in the C-1A zoning classification and that the City was estopped from denying Corn permission to build the Project. Corn argues that the state court judgment conclusively establishes his just compensation claim as to the

Project; in effect, he argues, the state court judgment is a coupon entitling him to a just compensation award when presented to a federal court. All the federal court has to do is determine the amount of compensation due.

The City contends that whether Corn had a property interest in a particular development project is irrelevant to a Fifth Amendment just compensation claim. According to the City, Corn's alleged property interest in the Project properly was the subject of Corn's substantive due process claim, but has no place in a just compensation claim. Even if an interest in a particular project is a cognizable source of a just compensation claim, the City argues, Corn had no property interest in the Project because the district court correctly found that Corn had no legitimate claim of entitlement to build the mini-warehouse.

## V. DISCUSSION

A. *Whether the City Effected a Taking of the Parcel*

To establish a just compensation claim, a landowner must show that the challenged regulation (1) does not substantially advance legitimate state interests, or (2) denies him economically viable use of his land. *Agins v. City of Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980); *Reahard v. Lee County,* 968 F.2d 1131, 1135 (11th Cir.1992). On the last appeal in this case, we held that the ordinances substantially advanced legitimate government interests. *Corn,* 997 F.2d at 1373. Thus, to establish his just compensation claim with respect to the Parcel, Corn must show that the ordinances denied him economically viable use of the Parcel.

When a landowner temporarily is deprived of all economically viable use of his land, he is entitled to just compensation for the temporary taking of his property. *First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal.,* 482 U.S. 304, 321, 107 S.Ct. 2378, 2389, 96 L.Ed.2d 250 (1987). Corn divides his claim into several time periods, arguing that there was a temporary taking during the moratorium and until the state court judgment was affirmed and that the temporary taking ultimately matured into a permanent taking. We follow a similar approach, analyzing whether there was a temporary taking separately from Corn's permanent taking claim.

Whether a landowner has been deprived of all or substantially all economically viable use of his property, either permanently or temporarily, is an essentially ad hoc inquiry into whether the regulation goes "too far." *MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 349, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1986). The factfinder must consider (1) the economic impact of the regulation; (2) its interference with the landowner's reasonable investment-backed expectations; and (3) the character of the governmental action. *Id. See also Reahard,* 968 F.2d at 1136 (listing factors to be considered in analyzing just compensation claim). The district court correctly engaged in an ad hoc analysis of the relevant factors. The court concluded that Corn suffered no diminution in his reasonable investment-backed expectations and that many economically viable uses of the Parcel were permitted.

Except with respect to the moratorium period, the district

court's factual findings are not clearly erroneous.  Indeed, it is undisputed that, except during the moratorium, Corn could use the Parcel for any use permitted in a B-3 zoning category, including to build the proposed shopping center.  We hold, therefore, that there was no taking of the Parcel after the moratorium expired.

Corn contends that his case is special and not subject to traditional takings analysis.  According to Corn, the economic impact of the ordinances and their effect on his reasonable investment-backed expectations are irrelevant because he has obtained a state court judgment holding that the ordinances could not validly be applied to the Parcel.  Corn fails, however, to cite any authority for his suggestion that a government automatically is liable to pay just compensation under the Fifth Amendment whenever a zoning authority subsequently is held to be estopped from enforcing a change in zoning.  We know of no such rule.  The standard for whether regulation effects a taking is whether the landowner has been denied all or substantially all economically viable use of his land.  *Reahard,* 968 F.2d at 1136.

Corn's only argument as to how he has been denied all economically viable use of the Parcel is that he was not legally obligated to use the Parcel for any of the permissible economically viable uses.  Because he could not build the mini-warehouse, and was not legally required to build anything else, the argument goes, Corn was left with no economically viable use for the Parcel.  Again, Corn cites no authority for his proposition, and we have found none.  The standard is not whether the landowner has been denied those uses to which he wants to put his land;  it is whether

the landowner has been denied all or substantially all economically viable use of his land.  *See Baytree of Inverrary Realty Partners v. City of Lauderhill,* 873 F.2d 1407, 1410 (11th Cir.1989) (holding that neither inability to develop exactly what developer wanted, deprivation of most beneficial use of land, nor severe decrease in value of property amounts to taking).  Because Corn was not denied economically viable use of the Parcel after the expiration of the moratorium, his claim that there was a taking of the Parcel after the moratorium expired fails.

As to the moratorium period, however, we must remand to the district court for further factual findings.  The district court found that the moratorium:  (1) served a reasonable purpose;  (2) was reasonable in duration, in light of the length of time that the Parcel lay dormant before the moratorium;  and (3) did not deprive Corn of all economically viable use of the Parcel.  The court then held that the moratorium did not effect a temporary taking of the Parcel.  The court did not explain, however, whether its holding was based on the reasonableness of the moratorium, the existence of economically viable uses of the Parcel during the moratorium, or both.  Nor did the court make any explicit factual findings as to what, if any, economically viable uses of the Parcel were available to Corn during the moratorium.

The district court's factual findings are insufficient for effective appellate review.  We are unable to determine from the record whether the district court's conclusion that the Parcel could be put to economically viable use during the moratorium is clearly erroneous.  The parties proceed on the assumption that the

moratorium prohibited Corn from building anything on the Parcel. However, our review of the ordinances reveals that the Parcel was re-zoned B-3 within a month after the moratorium began, suggesting that the Parcel thereafter may not have been subject to the moratorium. It may be that the district court based its conclusion on a finding that, during the moratorium, Corn could use the Parcel for any use permitted by the B-3 zoning classification, but any such finding was not explicit. Hence, we remand for the court to make findings as to the economically viable uses of the Parcel during the moratorium.

In light of our decision to remand, we need not address Corn's contention that the district court erred in considering the reasonableness of the moratorium. According to Corn, there was a temporary taking of the Parcel if he was denied all or substantially all economically viable use of the Parcel during the moratorium, regardless of the moratorium's reasonableness. The City responds that there was no taking because the moratorium lasted just long enough to study the City's commercial zoning scheme. We need not address this significant constitutional question of first impression[4] at this juncture, as it may turn out

_____

[4]Neither the Supreme Court nor this circuit has addressed whether a temporary moratorium on development necessarily effects a temporary taking. In *First English,* the Supreme Court assumed that a county ordinance denied the landowner all use of its property for a considerable period of years. 482 U.S. at 322, 107 S.Ct. at 2389. The Court held that the ordinance effected a temporary taking, requiring the county to pay fair value for the use of the property during that time period. *Id.* The Court took pains, however, to limit its holding: "We limit our holding to the facts presented, and of course do not deal with the quite different questions that would arise in the case of normal delays in obtaining building permits, *changes in zoning ordinances,* variances, and the like which are not before us." *Id.* at 321,

that the moratorium did not deprive Corn of all economically viable use of the Parcel.

B. *Whether the City Effected a Taking of the Project*

Corn argues that the state court judgment conclusively establishes that he had a property right in the Project which was taken by the City when it denied him permission to build the mini-warehouse. He contends that the City's actions denied him of all economically viable use of *the Project,* entitling him to just compensation. The City responds that, even if Corn had a property interest in the Project, it is not the type of property interest cognizable in a just compensation claim. According to the City, any property interest in the Project properly was the subject of Corn's substantive due process claim and may not be relitigated in the guise of a just compensation claim.

The district court held that Corn had no property interest in developing the Project. In so holding, however, the district court failed to consider the state court's holding that, under Florida law, Corn had acquired certain vested rights in the Project. Nevertheless, we need not decide what preclusive effect, if any, the state court finding of vested rights under state law has in this federal action for just compensation under the Fifth Amendment. We hold that, regardless of what vested rights Corn may have had in the Project under Florida law, a denial of permission to build a particular development project does not, by itself,

---

107 S.Ct. at 2389 (emphasis added). Unlike the moratorium in this case, which had a set expiration date, the ordinance in *First English* by its terms was indefinite; it would expire only if declared unconstitutional or repealed.

state a just compensation claim.  To recover just compensation, Corn must show that the denial of his rights in the Project denied him all or substantially all economically viable use of *the Parcel,* not simply economically viable use of whatever property rights he had in the Project.[5]

The Fifth Amendment prohibits the government from taking private property for public use without paying just compensation. The "private property" subject to the Fifth Amendment's prohibition, however, does not include every single property interest recognized by the law.  Corn correctly notes that the Supreme Court has recognized that the Just Compensation Clause protects property interests other than just fee simple ownership of land.  *See, e.g., Dolan v. City of Tigard,* 512 U.S. 374, ----, 114 S.Ct. 2309, 2316, 129 L.Ed.2d 304 (1994) (Fifth Amendment protects right to exclude others);  *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 831, 107 S.Ct. 3141, 3145, 97 L.Ed.2d 677 (1987) (same). But Corn cites no authority holding that a denial of rights in a particular development project requires just compensation when, as here, the denial substantially advances legitimate governmental interests and does not deny the landowner all or substantially all economically viable use of his land.

The Supreme Court's decisions suggest that a just compensation claim turns on the remaining economically viable uses of the land itself rather than on the ability to take advantage of a particular

---

[5]The Supreme Court has expressed no view on the proper test to be applied to a takings claim based on a vested rights theory. *Williamson County Regional Planning Comm'n,* 473 U.S. at 191 n. 12, 105 S.Ct. at 3119 n. 12.

right relative to the land. In *Penn Central Transp. Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), for example, the Court rejected the type of narrow focus on particular rights urged by Corn, characterizing as "quite simply untenable" the suggestion that a taking is established simply by showing that a landowner has been denied the ability to exploit a particular property interest. *Id.* at 130, 98 S.Ct. at 2662. The landowner in *Penn Central* argued that New York City had deprived it of any gainful use of the valuable air rights above Grand Central Station and that, regardless of the value of the remainder of the parcel, the city had taken its right to the airspace, entitling it to just compensation measured by the fair market value of the air rights. Rejecting this argument, the Court noted:

> "Taking" jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights *in the parcel as a whole*....

*Id.* (emphasis added). *See also Andrus v. Allard,* 444 U.S. 51, 65-66, 100 S.Ct. 318, 327, 62 L.Ed.2d 210 (1979) ("But the denial of one traditional property right does not always amount to a taking. At least where an owner possesses a full "bundle" of property rights, the destruction of one "strand" of the bundle is not a taking, because the aggregate must be viewed in its entirety.")

It is true that the Supreme Court has found a taking when economically viable uses of the land itself remain. Those cases, however, generally have involved either a physical invasion of the land, *see, e.g., Loretto v. Teleprompter Manhattan CATV Corp.,* 458

U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982); *Kaiser Aetna v. United States,* 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979), or destruction of a fundamental attribute of ownership, *see, e.g., Nollan,* 483 U.S. 825, 107 S.Ct. 3141 (right to exclude others); *Kaiser Aetna,* 444 U.S. 164, 100 S.Ct. 383 (same). Here, of course, Corn's land has not been physically invaded, and Corn does not contend that the right to build a mini-warehouse is a fundamental attribute of ownership or "one of the most essential sticks in the bundle of rights that are commonly characterized as property." *Dolan,* 512 U.S. at ----, 114 S.Ct. at 2316 (quoting *Kaiser Aetna,* 444 U.S. at 176, 100 S.Ct. at 391).

Corn correctly notes that the property rights protected by the Fifth Amendment are created and defined by state law. *See Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1030, 112 S.Ct. 2886, 2901, 120 L.Ed.2d 798. He errs, however, in suggesting that the Fifth Amendment requires the payment of just compensation for every deprivation of a right recognized by state law. "Property" as used in the Just Compensation Clause is defined much more narrowly than in the due process clauses. *Pittman v. Chicago Bd. of Educ.,* 64 F.3d 1098, 1104 (7th Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct. 2497, 135 L.Ed.2d 189 (1996); *Pro-Eco, Inc. v. Board of Comm'rs of Jay County, Ind.,* 57 F.3d 505, 511 n. 6 (7th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 672, 133 L.Ed.2d 522 (1995). *See also Scott v. Greenville County,* 716 F.2d 1409, 1421-22 & n. 20 (4th Cir.1983) (entitlement to building permit is property protected by due process clause but not by Fifth Amendment takings doctrine). Thus, while certain property interests may not

be taken without due process, they may be taken without paying just compensation. We think that Corn's right in the Project is such an interest.[6]

Corn contends that this circuit has held that a denial of vested rights in a development project may entitle a developer to just compensation under the Fifth Amendment. According to Corn, *A.A. Profiles, Inc. v. City of Fort Lauderdale,* 850 F.2d 1483 (11th Cir.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1743, 104 L.Ed.2d 180 (1989), and *Wheeler v. City of Pleasant Grove,* 664 F.2d 99 (5th Cir.1981), *cert. denied,* 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1982), establish that a landowner is entitled to just compensation when denied a property interest in a project, regardless of whether the land itself may be put to other economically viable uses. The City contends that *A.A. Profiles* and *Wheeler* are better viewed as due process cases rather than as just

---

[6]Our holding that, to recover just compensation, Corn must show that he was denied economically viable use of the Parcel, as opposed to the Project, is compelled by practical considerations as well. Corn's position would require the government "to regulate by purchase." *Andrus,* 444 U.S. at 65, 100 S.Ct. at 326. Government would be required to pay just compensation whenever it deprived someone of a property interest, regardless of whether the deprivation violated due process or any other constitutional rights. Indeed, the due process clause would become superfluous with respect to government deprivations of property interests. No longer would plaintiffs have to show that the government's actions were arbitrary and capricious or procedurally deficient; showing deprivation of the property right alone would suffice to recover just compensation.

In this case, we need not identify the line between property rights protected by the Just Compensation Clause and those protected only by due process and other constitutional guarantees. We hold only that a denial of Corn's rights in the Project does not require just compensation because economically viable uses of the Parcel remain.

compensation cases.

Plaintiff in *A.A. Profiles* planned to operate a wood-chipping business on its land. Plaintiff received the necessary approvals from the city commission, completed the purchase of the land, obtained building permits, and commenced construction on the land. *Id.* at 1485. Subsequently, the city withdrew its approval, issued a stop work order, and re-zoned the land. *Id.* Plaintiff alleged that the city's actions violated the prohibition against taking private property without just compensation and procedural due process. *Id.* We framed the issue as whether the city's actions substantially advanced a legitimate state interest. *Id.* at 1478. In finding that they did not, we relied heavily on our "indistinguishable" decision in *Wheeler.* In *Wheeler,* we held that a city ordinance prohibiting the plaintiff from building an apartment complex for which it had already received a building permit was arbitrary and capricious and therefore violated due process. *Id.* at 100. We also characterized the city ordinance in *Wheeler* as a "confiscatory measure," and noted that a regulatory undertaking that is "confiscatory" is a taking. *Id.*

Though the City correctly notes that the government action in both *A.A. Profiles* and *Wheeler* violated due process, we agree with Corn that both cases hold that a denial of rights in a development project may give rise to a just compensation claim as well as to a due process claim. But we cannot agree with Corn's suggestion that, under *A.A. Profiles* and *Wheeler,* a developer establishes a just compensation claim simply by showing denial of a vested right in a particular development project. We based our holding in both

cases on the first prong of a just compensation claim, holding that the government action failed to advance a legitimate state interest. *A.A. Profiles,* 850 F.2d 1487-88; *Wheeler,* 664 F.2d at 100. We did not mention the "economically viable use" prong of a just compensation claim. Neither *A.A. Profiles* nor *Wheeler* addresses the issue in this case: whether government actions substantially advancing legitimate state interests effect a taking when they deny economically viable use of a particular development right but allow the land itself to be used for many economically viable uses.

For the reasons discussed above, we hold that the government does not effect a taking when its actions substantially advance legitimate state interests and leave economically viable uses of the land itself. Thus, Corn may recover just compensation only to the extent that he was denied economically viable use of the Parcel; he may not recover just compensation for any denial of his rights in the Project that did not also deny him economically viable use of the Parcel.

## VI. CONCLUSION

We vacate the district court's judgment on Corn's claim that the moratorium effected a temporary taking of the Parcel because the district court's findings are not sufficient for effective appellate review. We remand for the district court to make further factual findings on that claim. In all other respects, the district court's judgment is affirmed.

AFFIRMED IN PART; VACATED and REMANDED IN PART.