709 So.2d 575 (1998)
Don C. PAEDAE and Dennis Paedae, Appellants,
v.
ESCAMBIA COUNTY, A Political Subdivision of the State of Florida, Appellee.
No. 97-2567.
District Court of Appeal of Florida, First District.
March 13, 1998.
Rehearing Denied May 18, 1998.
*576 David A. Sapp of King & Sapp, Pensacola, for appellants.
David G. Tucker, County Attorney; James M. Messer, Chief Litigation Attorney, Pensacola, for appellee.
WOLF, Judge.
Appellants challenge a final summary judgment entered in favor of the defendant, Escambia County, in an action for damages, pursuant to section 42 U.S.C. § 1983, and state law. The issues raised before us are (1) whether the wrongful denial of the right to use property in a particular manner will necessarily support a federal civil rights claim, absent evidence that the denial deprived the owner of all reasonable use of the land; and (2) whether there is a state cause of action for damages based upon the wrongful denial of a development order. We find that neither a federal nor state cause of action for damages exist under the circumstances of this case, and we affirm.
In December 1991, the appellants, Don and Dennis Paedae, received title and interest in a 25-acre parcel of unimproved land. The Paedaes planned to sell parcels for single-family dwellings, including mobile homes. The property was designated "rural residential" (RR) under Escambia County zoning ordinance 89-27, which permits mobile homes. The property was also designated as "low density residential" (LDR) on the future land use map of the Escambia County Comprehensive Plan. The comprehensive plan did not specifically address whether the LDR designation permitted mobile homes.
The Paedaes marketed parcels of property and informed potential purchasers that mobile homes used for single-family residences would be permitted on the parcels. After at least one potential purchaser was denied a mobile home permit by the planning and zoning supervisor, the Paedaes discovered that Escambia County was taking the position that mobile homes were not allowed in areas designated as LDR under the comprehensive plan. The Paedaes had been advised by letter dated April 9,1992, from the county administrator that the county attorney's office had rendered an opinion that mobile homes could be placed on the property designated LDR. However, at an April 30, 1992, meeting of the Escambia County commissioners, the commissioners determined that mobile homes would not be a permitted use on LDR property. The Paedaes received official notice that mobile homes would not be allowed on the property in a letter dated May 4, 1992. After that, the Paedaes stopped marketing the property and attempted to resolve the county's position regarding the use of their property for mobile homes.
The Paedaes filed their first complaint with the circuit court on October 12, 1992, seeking "damages, declaratory relief, and injunctive relief for failure to follow comprehensive plan and zoning ordinances." By an order dated June 8, 1994, the circuit court found mobile homes to be a permitted use and enjoined the county from enforcing its interpretation to the contrary, finding that the county's interpretation prohibiting mobile homes was "arbitrary, capricious, unreasonable and unlawful." The Paedaes filed their Second Amended Complaint on February 27, 1996, alleging a civil rights claim against Escambia County under 42 U.S.C. § 1983, alleging a claim of inverse condemnation against the county, and seeking other supplemental state relief.[1]
*577 The interpretation of the zoning code which disallowed the use of appellants' property for mobile homes was not a legislative action, but rather in the nature of a denial of a development permit, pursuant to section 163.3164, Florida Statutes. See Board of County Comm'rs of Brevard County v. Snyder, 627 So.2d 469, 474-475 (Fla.1993); City of Lakeland v. Florida Southern College, 405 So.2d 745, 746 (Fla. 2d DCA 1981). Recent cases from the United States Eleventh Circuit Court of Appeal demonstrate that the mere allegation of a wrongful denial of an owner's right to use a piece of property in one particular manner through the denial of a development permit will not by itself support a federal action for damages. See, e.g., Corn v. City of Lauderdale Lakes, 95 F.3d 1066 (11th Cir.1996).
In McKinney v. Pate, 20 F.3d 1550 (11th Cir.1994) (en banc), cert. denied, 513 U.S. 1110, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995), the eleventh circuit held that state-created rights are not subject to substantive due process claims because "substantive due process rights are created only by the Constitution," and whereas a right which merits substantive due process protection is protected against government actions regardless of the fairness of the procedures used to implement them, "state law based rights constitutionally may be rescinded so long as the elements of proceduralnot substantivedue process are observed." Id. at 1556 (citing Collins v. City of Harker Heights, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). In Jacobi v. City of Miami Beach, 678 So.2d 1365, 1366-1367 (Fla. 3d DCA 1996), the court adopted the McKinney approach in the context of land use cases. The court found there was no federally protected right in having lots configured in a particular manner; therefore, absent a taking of property, no substantive due process claim could be based on the denial of the state-created right. See id. at 1367.
In Mackenzie v. City of Rockledge, 920 F.2d 1554 (11th Cir.1991), the appellant challenged the city's use of arbitrary parking requirements to deprive him of a protected property interest in a building permit. Citing Marine One, Inc. v. Manatee County, 877 F.2d 892 (11th Cir.1989), the court in Mackenzie pointed out that Florida law creates no property right in possessing a building permit, and that state law defines the parameters of such a property interest for section 1983 purposes. See Mackenzie, supra at 1559. In Mackenzie, the court held that even if the city's interpretation of its zoning ordinance had been arbitrary and capricious, the owner had no protectable property interest in a building permit under Florida law, and thus, the denial of the permit could not form the basis of a due process claim under 42 U.S.C. § 1983. See id.
In Corn, supra, the court held that refusal of a permit for a mini warehouse was not an unconstitutional taking in that denying permission to build a particular type of project did not state a claim for an unconstitutional taking. The court held that the improper denial of a permit does not result in an unconstitutional taking of property where the plaintiff has not shown that the denial of the permit denied the plaintiff all economically viable use of his property. See Corn, supra at 1076. In Villas of Lake Jackson, Ltd. v. Leon County, 121 F.3d 610 (11th Cir.1997), the court further defined when a claim of a regulatory taking can be sustained, and found that there was no cause of action for a "substantive due process taking" under the facts of that case. There, as here, the landowners argued that under the due process clause, they could challenge a taking of a specifically recognized property right even though they retained enough use of the entire property to avoid a taking under the taking clause if the parcel had been considered as a whole. See id. at 612. The court in Villas of Lake Jackson found that a constitutional claim challenging the regulatory deprivation of a single use of real property had to be considered in light of the remaining use of the property as a whole, and pointed out that the Supreme Court has consistently held that a "constitutional right against excessive regulation does not encompass separate protection of individual strands in the bundle of property rights ..." Id. at 614.
This case involves no federally protected right. There is also no cause of action for damages under state law. In Trianon *578 Park Condominium Ass'n, Inc. v. City of Hialeah, 468 So.2d 912, 919 (Fla.1985), the Florida Supreme Court stated that the judicial branch has no authority to interfere with the conduct or the functions of county commissioners or boards in the issuance of or refusal to issue licenses and permits. Thus, there has never been and there is no present state tort liability imposed for peculiarly governmental functions such as permitting. In Akin v. City of Miami, 65 So.2d 54 (Fla. 1953), the supreme court affirmed a decision of the Dade County Circuit Court which found that sovereign immunity barred recovery of damages against a municipality in supplemental proceedings for damages for the denial of a building permit, even though the denial of the permit was found to be arbitrary. Likewise, in City of Cape Coral v. Landahl, Brown & Weed Assocs., Inc., 470 So.2d 25 (Fla. 2d DCA), rev. denied, 480 So.2d 1294 (1985), cert. denied, 478 U.S. 1010, 106 S.Ct. 3308, 92 L.Ed.2d 721 (1986), the principle of sovereign immunity was applied to bar recovery of money damages against the city for wrongful revocation of a building permit. There, the court found that there is no cause of action for the manner in which a municipality exercises its governmental function of issuing or refusing to issue permits and that those actions of a municipality are immune from an action for damages. See id. at 27. In City of Live Oak v. Arnold, 468 So.2d 410, 412 (Fla. 1st DCA 1985), this court also found that even where the city acted in an arbitrary and capricious manner with regard to the issuance of a building permit, sovereign immunity barred a subsequent lawsuit for damages against the city. In the instant case, the county's action with regard to its interpretation of the comprehensive plan and refusal to issue a permit to the Paedaes based on that interpretation is a governmental function which is protected by sovereign immunity.
The decision of the trial court is affirmed.
MINER, J., and SHIVERS, DOUGLASS B., Senior Judge, concur.
NOTES
[1] The inverse condemnation claim was decided in favor of the county by an earlier summary judgment and is not the subject of this appeal.