Richard REAHARD; Ann P. Reahard, Plaintiffs–Appellees,

v.

LEE COUNTY, Defendant–Appellant.

No. 93–2743.

United States Court of Appeals, Eleventh Circuit.

Sept. 2, 1994.

Rehearing Denied Oct. 19, 1994.

---

John Joseph Renner, Lee County Atty. Office, Ft. Meyers, FL, Bruce R. Conroy, City Atty. Office, Cape Coral, FL, Robert N. Reynolds, Winter Park, FL, for appellant.

Theodore L. Tripp, Jr., Garvin & Tripp, Ft. Myers, FL, for appellees.

Before TJOFLAT, Chief Judge, KRAVITCH, Circuit Judge, and CLARK, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

At issue in this case is the constitutionality of the developmental regulations placed on an approximately 40 acre tract of waterfront land in Lee County, Florida. Because we hold that the federal courts lack jurisdiction on ripeness grounds, we REVERSE the judgment of the district court, and RE-

MAND this case to the district court with instructions to remand the cause to the state court from which it was removed.

I.

In 1944, appellee Richard Reahard's parents purchased a 540 acre tract of land in Lee County, Florida. Over the next three decades, his parents made use and profit from the 540 acre tract, subdividing, filling, developing and selling many single lots. By 1975, they retained only a 40 acre tract of undeveloped wetlands, which is the subject of this action.

Upon the death of Richard Reahard's mother on November 30, 1984, he inherited the 40 acre site and sought to develop it as either a 41 or 126 unit lot subdivision for single-family residences. This plan was thwarted when the Lee County Board of Commissioners passed the Lee County Comprehensive Land Use Plan ("Lee Plan") on November 16, 1984. The Lee Plan took effect in December 1984.

The Lee Plan classified the Reahards'[1] property as a Resource Protection Area ("RPA"), limiting development either to a single residence, or for use of a "recreational, open space or conservation nature."[2] The Reahards opposed this classification by pursuing several available administrative procedures. On January 27, 1988, they sought an amendment to the Lee Plan which would have upzoned the property. The Lee County Board of Commissioners denied this request. The Reahards then sought an "administrative interpretation" of their development rights, pursuant to Section XIV of the Lee Plan. That section requires, *inter alia*, that "[i]nterpretations [of the Lee Plan] which would be confiscatory, arbitrary, capricious,

1. Richard Reahard's wife, Ann P. Reahard, was added as a party after this action was filed.

2. Under the Lee Plan, RPA wetlands are considered "areas in which it is necessary to protect, conserve, restore or preserve water resource systems and the biological functions attendant thereto." Lee Plan, Policy 1.5.1, p. II–7. Deemed "unsuitable for all but extremely low density development," their preservation prevents degradation of natural resources, including water quality, freshwater storage capabilities, bi-

ological productivity, and viability of plants and animals. *Id.* Their preservation also prevents flooding. *Id.* Lee County has prohibited the construction of ditches, canals, dikes, roads above grade, and additional drainage on RPA wetlands. *Id.* at II–7–8. Maximum density on RPA sites is one dwelling unit per forty acres. *Id.* at II–8. It is undisputed that the site in this case is a pristine wetland, and is inundated with water during high fall and spring tides, and during any powerful storm.

unreasonable, or which would deny all economically viable use of property shall be avoided." Lee Plan, Admin.Interp. Chapter XIV–6B(1). It also provides an exception to the Lee Plan where "vested rights" exist, and sets forth standards for determining when an applicant may claim this exception. *Id.,* Chapter XIV–7(6).

In July 1990, the Lee County Attorney's Office, the administrative designee under the Lee Plan, ruled that the Reahards were entitled to construct four single-family residences on the parcel. The Reahards appealed this determination to the Board of County Commissioners, on the ground that it was based on mistakes in deeding and land boundaries. On September 19, 1990, the Board issued a final decision, upholding the administrative determination rejecting the Reahards' proposal, but "modif[ying it] to reflect approval for one single family residence on the 35 acre parcel."

Over one year previous to the Board's decision, on September 1, 1989, the Reahards had filed the instant complaint in Florida state court. They alleged that although the classification of their land as an RPA was a valid exercise of the County's police power, it constituted a taking under state and federal law entitling them to just compensation.[3] On October 5, 1989, Lee County removed to federal court.[4]

The case was heard before a magistrate judge, pursuant to 28 U.S.C. § 636(c)(1),[5] and was limited to the issue of whether a taking had occurred. The magistrate judge held that a taking had occurred because but for the Lee Plan "some of the property" could have been developed and, moreover, because the Lee Plan had caused a "substantial deprivation of the value" of the parcel. The magistrate judge further held that the Reahards had exhausted their administrative state remedies. A jury awarded them $700,000.00, plus interest accrued, as just compensation.

Lee County appealed directly to this court, pursuant to 28 U.S.C. § 636(c)(3).[6] We reversed the magistrate judge's order, *Reahard v. Lee County,* 968 F.2d 1131, 1136 (11th Cir.1992), and held that the magistrate judge had misapplied the test for regulatory takings. Subsequently, we issued an addendum opinion instructing the magistrate judge to address the question of ripeness and determine whether the district court had jurisdiction over this matter. *Reahard v. Lee County,* 978 F.2d 1212, 1213 (11th Cir.1992). As to jurisdiction, we noted not only that there was a "question regarding the Reahards' efforts to secure appropriate administrative remedies," but also that there was "nothing in the record regarding the judicial remedies available in Florida state courts." *Id.* Specifically, we recognized that "[a]ssuming that these claims could be satisfied through adequate state judicial procedures, the Reahards have not stated a ripe federal claim under *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), and there is no subject matter jurisdiction." *Id.*

On remand, the magistrate judge held that all state remedies had been exhausted because no remedy existed under Florida law, and that no further administrative remedies existed. Again holding that a taking had occurred, the magistrate judge reinstated the jury verdict of $700,000.00. We now revisit our prior rulings, and hold that based on the analysis required by *Williamson,* this matter is not ripe for review and the federal courts therefore lack subject matter jurisdiction.

---

**3.** Specifically, the Reahards invoked sections 163.3194(4)(b) and 380.08 of the Florida Statutes, Article X, Section 6 of the Florida Constitution, and the Fifth and Fourteenth Amendments to the United States Constitution.

**4.** For a complete description of this case's prior procedural history and the evidence presented below, see *Reahard v. Lee County,* 968 F.2d 1131, 1133–34 (11th Cir.1992).

**5.** Parties may consent to have a United States magistrate judge "conduct any or all proceedings

in a jury or non-jury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves." 28 U.S.C. § 636(c)(1).

**6.** Title 28 U.S.C. § 636(c)(3) provides that "an aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate in the same manner as an appeal from any other judgment of a district court."

## II.

The question of ripeness "goes to whether the district court had subject matter jurisdiction." *Greenbriar Ltd. v. City of Alabaster,* 881 F.2d 1570, 1573 (11th Cir.1989). As a jurisdictional issue, it is reviewed by this court de novo. *See generally Tamiami Partners v. Miccosukee Tribe,* 999 F.2d 503, 507 (11th Cir.1993); *United States v. Perez,* 956 F.2d 1098, 1101 (11th Cir.1992); *see also Gemtel Corp. v. Community Redevelopment Agency,* 23 F.3d 1542, 1545 (9th Cir.1994) ("We review ripeness de novo.") (citation omitted).

Lee County argues that the Reahards' claim did not ripen until the County Board of Commissioners issued its September 19, 1990 decision denying permission to build anything but a single-family residence and affirming as modified the administrative determination. It contends that five months prior to that date, the Florida Supreme Court recognized a state compensation remedy for regulatory takings in *Joint Ventures, Inc. v. Department of Transp.,* 563 So.2d 622 (Fla.1990). The County therefore argues that the federal courts have never had subject matter jurisdiction, and that until the Reahards pursue their state remedy this matter is not ripe for review. For the reasons that follow, we agree.

As we have noted previously, this is a just compensation action, in which the aggrieved landowners seek only monetary compensation for the value taken. *See Reahard,* 968 F.2d at 1135.[7] "In order for such a claim to be ripe for adjudication, the landowner must overcome two hurdles: the final decision hurdle and the just compensation hur-

dle." *Id.* at 1135 n. 7 (quoting *Eide v. Sarasota County,* 908 F.2d 716, 720–21 (11th Cir. 1990), *cert. denied,* 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991)). To satisfy the "final decision" hurdle, an aggrieved landowner must demonstrate that the decisionmaker "charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson,* 473 U.S. at 186, 105 S.Ct. at 3116.[8] In other words, a just compensation claim cannot ripen until the "local authority has determined the nature and extent of the development that will be permitted." *Eide,* 908 F.2d at 721.

In most cases, no "final decision" has been reached until an aggrieved landowner has applied for at least one variance to a contested zoning ordinance. *See Williamson,* 473 U.S. at 186, 105 S.Ct. at 3116 (claim not ripe where respondent did not seek variances from Board of Zoning Appeals); *Resolution Trust Corp. v. Town of Highland Beach,* 18 F.3d 1536, 1547 (11th Cir.1994) ("[I]n most instances a property owner must apply for a variance for a less intrusive use, to determine what use the municipality will allow.…"); *Executive 100, Inc. v. Martin County,* 922 F.2d 1536, 1540 (11th Cir.) (aggrieved landowner must "have sought variances or pursued alternative, less ambitious development plans"), *cert. denied,* —— U.S. ——, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991).

In the present case, the Reahards initially sought what was in effect a variance from the Lee Plan, by requesting that the Board's administrative designee issue an "administrative interpretation" regarding their proposed 127 unit development.[9] The administrative

---

7. In a just compensation claim, as opposed to a due process takings claim, the aggrieved landowner "does not seek 'an invalidation of the local authority's application of the regulation,' … but simply monetary compensation for the value taken." *Reahard,* 968 F.2d at 1135 (quoting *Eide v. Sarasota County,* 908 F.2d 716, 720–21 (11th Cir.1990), *cert. denied,* 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991)).

8. In *Williamson,* 473 U.S. at 191, 105 S.Ct. at 3118–19, the Court held no "final decision" had been reached until the local planning commission "determine[d] that no variances will be granted," because only then could a jury deter-

mine whether respondent would "be unable to derive economic benefit" from the land.

9. Under the Lee Plan's administrative guidelines, zoning designations initially are challenged before the Plan's administrative designee—here, the Lee County Attorney's Office. That designee determines whether to affirm the classification or issue a variance. A variance from the Lee Plan designation may be issued according to the following guidelines:

  (1) Interpretations [of the Lee Plan] which would be confiscatory, arbitrary, capricious, unreasonable, or which would deny all eco-

designee—in this case, the Lee County Attorney—determined that the Reahards had the right to build four single residences on the parcel. The Reahards appealed this decision to the Lee County Board of Commissioners, which, acting pursuant to the appeals process set forth in the Lee Plan, affirmed as modified the administrative determination on September 19, 1990. The Board's rejection of the proposed development concluded the administrative review process set forth in the Lee Plan, and therefore represented a "final decision" on the Lee Plan's application to the property. *See Greenbriar,* 881 F.2d at 1575–76 (final decision reached when City Council and Planning and Zoning Commission had rejected property owner's proposals).[10] Until the Board's decision was issued, it had not been conclusively determined that the Reahards would not be permitted to exceed the single residence limitation on RPA land set forth in the Lee Plan. The Reahards' claim therefore could not have ripened, if ever, until September 19, 1990, the date of the Lee County Board of Commissioners' final decision.[11]

This conclusion does not end our ripeness inquiry. The Reahards' claim has ripened only if the "just compensation" hurdle has been met, *i.e.* if "all state procedures for just compensation have been utilized." *Eide,* 908 F.2d at 723 (citing *Williamson,* 473 U.S. at 185–86, 105 S.Ct. at 3116); *see also Executive 100,* 922 F.2d at 1542 ("[I]f the government has provided an adequate process for the property owner to obtain compensation [such as inverse condemnation proceedings], and if resort to that process yields just compensation, then the owner has no just compensation claim.") (citing *Williamson,* 473 U.S. at 195). The rationale for this requirement is that "the State's action is not 'complete' in the sense of causing a constitutional injury 'unless or until the State fails to provide an adequate postdeprivation remedy for the property loss.'" *Williamson,* 473 U.S. at 195, 105 S.Ct. at 3121 (quoting *Hudson v. Palmer,* 468 U.S. 517, 532 n. 12, 104 S.Ct. 3194, 3203 n. 12, 82 L.Ed.2d 393 (1984)). While "the finality requirement is concerned with whether the initial decisionmaker has actual, concrete injury[,] the exhaustion re-

---

nomically viable use of property shall be avoided;

. . . .

(3) All interpretations should weigh the public benefits and burdens against the private benefits and burdens to be imposed.... [I]f the effect of the interpretation would be to relieve or prevent a substantial public burden, greater weight should be given to the relief or prevention of that burden;

(4) Interpretations should be consistent with background data, other policies, and objectives of the Plan[.]

Lee Plan, Admin.Interp. Chapter XIV pp. 6–8. The Lee Plan also recognizes a "vested rights" remedy, which exists where an applicant has relied in good faith and to his substantial detriment on an act or omission of Lee County. *Id.* Chapter XIV p. 7.

An aggrieved landowner may appeal the administrative designee's determination concerning these remedies to the full Board of County Commissioners, which then must issue a final decision within thirty days. *Id.* Chapter XIV p. 9.

10. In some cases, an administrative decision might be sufficiently final without resort to any appeals process. *See, e.g., Weissman v. Fruchtman,* 700 F.Supp. 746, 755 (S.D.N.Y.1989) ("[A]n administrative decision may be a sufficiently final action to satisfy the finality requirement without representing an exhaustion of all available administrative remedies."). But

where, as here, the variance process explicitly provides for an "appeal" to the authoritative local decisionmaker—such as, in this case, the Board of Commissioners—the appeal must be fully pursued before any definitive "final" decision occurs. *Compare, e.g., Milne v. Township of Oregon,* 777 F.Supp. 536, 537–38 (E.D.Mich. 1991) (appeal from denial of variance a prerequisite to claim of taking without just compensation) *with Patrick Media Group, Inc. v. City of Clearwater,* 836 F.Supp. 833, 836 (M.D.Fla.1993) (appeal from denial of variance unnecessary where ordinance did not provide for such appeal).

11. The County does not contend that the Reahards' claim ripened on a date after the Board's September 19, 1990 decision rejecting appellees' proposed 127 unit subdivision. We therefore need not address whether the submission of further, more modest proposals might have been acceptable to the County and might therefore have been a further prerequisite to ripeness. *Compare MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 351–53 and n. 9, 106 S.Ct. 2561, 2567–68 and n. 9, 91 L.Ed.2d 285 (1986) (Planning Commission's initial rejection of proposed 159 residence subdivision, based on inadequacies in plan, did not render just compensation claim ripe; "[r]ejection of exceedingly grandiose development plans does not logically imply that less ambitious plans will receive similarly unfavorable reviews").

quirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy." *Id.* at 193, 105 S.Ct. at 3120. *Cf. New Port Largo, Inc. v. Monroe County*, 985 F.2d 1488, 1493 (11th Cir.) (regulatory takings claim ripens only after "state judicial authorities ... make a final determination on the status of the subject property") (Tjoflat, C.J., concurring specially) (citing *Corn v. City of Lauderdale Lakes*, 904 F.2d 585, 588 (11th Cir.1990)), *cert. denied,* — U.S. ——, 114 S.Ct. 439, 126 L.Ed.2d 373 (1993).[12]

It follows that "[a]s a practical matter, *Williamson* precludes litigation of the merits of a just compensation claim in federal court unless the state declines to provide adequate procedures through which an aggrieved party might seek compensation." *New Port Largo*, 985 F.2d at 1496 (Tjoflat, C.J., concurring specially). The dispositive issue in this case therefore is whether the Reahards had at their disposal an available state remedy, such as an inverse condemnation action, at any time before the Board's final decision was issued in September 1990. If they did not, then this case became ripe on September 19, 1990, upon the final decision by the Board of Commissioners. But if they did, then this case has not yet ripened for purposes of federal review.

Before April 1990, it was not clear whether Florida's courts recognized an inverse condemnation remedy based on zoning classifications. In *Joint Ventures, Inc. v. Department of Transp.*, 563 So.2d 622 (Fla.1990), which was decided in April 1990 and involved a state-imposed development moratorium, the Florida Supreme Court for the first time explicitly recognized such a cause of action. *See id.* at 624 ("[T]he state must pay when it regulates private property under its police power in such a manner that the regulation effectively deprives the owner of the economically viable use of that property."); *Executive 100*, 922 F.2d at 1542 ("The Florida courts have recognized that ... property owners have the right to bring reverse condemnation proceedings seeking compensation for regulatory takings.") (citing *Joint Ventures*, 563 So.2d 622); *see also Palm Beach County v. Tessler*, 538 So.2d 846 (Fla.1989) (recognizing inverse condemnation action where county blocked off access to property located on roadway; reasoning that "[t]here is a right to be compensated through inverse condemnation when . government action causes a substantial loss of access to one's property even though there is no physical appropriation of the property itself"). This court, in turn, has held that a Florida property owner must pursue a reverse condemnation remedy in state court before his federal takings claim will be ripe, even where that remedy was recognized after the alleged taking occurred. *Executive 100*, 922 F.2d at 1542 (affirming dismissal of due process takings claim and just compensation claim).

As we have noted above, the Lee County Board of Commissioners decision issued on September 19, 1990 fulfilled the "final decision" requirement of *Williamson.* Several months earlier, however, the Florida Supreme Court recognized an inverse condemnation remedy. Thus, by the time that the "final decision" obstacle was removed from the path of the Reahards' federal claim, a second obstacle to that claim had been erect-

---

**12.** Two special concurrences in *New Port Largo*, 985 F.2d 1488 (per curiam) indicate some tension between this circuit's precedent in *Corn v. City of Lauderdale Lakes*, 904 F.2d 585 (11th Cir.1990) and *Williamson*, as to the accrual of a claim that property has been taken without just compensation. *Compare New Port Largo*, 985 F.2d at 1497 (Tjoflat, C.J. concurring specially) ("under *Corn* [as opposed to *Williamson*] a federal takings claim ripens only after the property owner has exhausted all legal means of challenging the ordinance;" thus, *"Corn* erred by improperly expanding *Williamson's* final decision requirement until 'state review entities'—rather than the initial decisionmakers—'have made a final determination' ") *with New Port Largo*, 985

F.2d at 1499 (Edmondson, J., concurring specially) (*Corn* addressed statute of limitations accrual, but "did not decide (because it was unnecessary to decide) when Corn's taking claim first became ripe ... for federal adjudication") (citing *Corn*, 904 F.2d at 588).

We are mindful of these concerns. Based on the circuit precedent cited herein, however, and also recognizing that *New Port Largo* and *Corn* involved accrual for purposes of the statute of limitations, not ripeness, we employ the two-pronged approach set forth in *Williamson.* The result is identical under either approach: until the Reahards pursue their remedy in Florida's courts, their claim is not yet ripe.

**1418**

ed in the form of a newly-recognized state remedy for inverse condemnation. The Reahards' claim therefore never has become ripe while on the federal court docket; until they have pursued their state remedy, the federal courts are without subject matter jurisdiction.[13]

### III.

For the reasons set forth above, we RE-VERSE the judgment of the district court, and REMAND this case to the district court with instructions to remand the cause to the state court from which it was removed.

---

**13.** The Reahards argue that we should disregard the holding in *Joint Ventures* because that opinion was issued subsequent to the removal of the case to federal court in October 1989, and is therefore not relevant. This might be a persuasive argument if subject matter jurisdiction had existed at the time of Lee County's removal to federal court. *See Grubbs v. General Electric Credit Corp.*, 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972) ("[W]here after removal a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is ... whether the federal district court would have had original jurisdiction of the case had it been filed in that court."); *cf. Bor–Son Bldng. Corp. v. Heller*, 572 F.2d 174, 181 (8th Cir.1978) (party who removes from state court of competent juris-

diction may not later secure dismissal based upon jurisdictional defects in removal court). But in this case, neither the federal nor the state courts ever had jurisdiction until the Board of Commissioners issued its "final decision" on September 19, 1990, long after the removal to federal court. *See Williamson*, 473 U.S. at 191, 105 S.Ct. at 3118–19; *Martinez v. Bolding*, 570 So.2d 1369, 1371 (Fla.Dist.Ct.App.1990), *review denied*, 581 So.2d 163 (Fla.1991); *Glisson v. Alachua County*, 558 So.2d 1030, 1035–36 (Fla.Dist.Ct.App.) (adopting Federal ripeness doctrine with respect to "final decision" requirement), *review denied*, 570 So.2d 1304 (Fla.1990). The date of removal therefore is not dispositive in determining the date on which the claim ripened.