[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-15394
Non-Argument Calendar

_____

D.C. Docket No. 8:14-cv-00949-MSS-TGW

ROSS SCOPELLITTI,
individually,
GREENPARK RESIDENCES, INC.,
a Florida corporation,

Plaintiffs-Appellants,

versus

CITY OF TAMPA,
a municipal corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 24, 2017)

Before WILSON, ROSENBAUM, and DUBINA, Circuit Judges.

PER CURIAM:

Appellants Ross Scopelliti and GreenPark Residences, Inc. (collectively referred to as "GreenPark") appeal the district court's order granting summary judgment in favor of Appellee, the City of Tampa ("the City"), on GreenPark's claims for inverse condemnation, violation of the Fair Housing Act ("FHA"), §1983 deprivation of procedural due process, abuse of process, and selective enforcement. After reviewing the briefs and the record, we affirm.

## I.  BACKGROUND

*A.  Facts*

GreenPark Residences, Inc. is a Florida corporation that operates and maintains an 18-unit mobile home park in Tampa, Florida. Scopelliti is the president and sole shareholder of GreenPark Residences, Inc. In October 2011, the City cited eight of GreenPark's units for violations of the City's Code of Ordinances pertaining to property maintenance and structural standards ("the Code"). These violations included failure to provide heat; broken and unrepaired steps, handrails, toilets, walls, and windows; roof leaks; missing smoke detectors; and faulty electrical wiring. In late October 2011, Scopelliti appeared on behalf of GreenPark at several hearings before the Code Enforcement Board ("CEB") regarding the violations.

2

The violations were never remedied. The City sent formal notice of the violations to GreenPark on November 17, 2011, and a reinspection conducted on January 26, 2012 revealed that the same units remained noncompliant with the Code.  On April 12, 2012, following another re-inspection, the City hand delivered a "final notice" warning that "[i]f the violations are not corrected by April 22, 2012 this case will result in further legal action, including forwarding to a special magistrate, and/or court summons, or abatement by a contractor."  No representative from GreenPark appeared at the subsequent hearing scheduled before a CEB Special Magistrate on August 1, 2012. The Special Magistrate entered eight separate violation orders finding GreenPark in violation of the Code. GreenPark requested and was granted a rehearing regarding the violation orders on August 7, 2012.  After the rehearing, the Special Magistrate affirmed the violation orders and found GreenPark in noncompliance with the orders.

On November 20, 2012, the City obtained a warrant to inspect the GreenPark property for compliance with the CEB Special Magistrate's violation orders.  Nine of GreenPark's units were found to be unfit for human habitation, to pose a serious public health and safety threat, and to constitute a public nuisance. The City issued condemnation orders for those nine units on November 28, 2012. The orders gave GreenPark the right to appeal by attending a hearing on December 5, 2012.

3

By January 10, GreenPark had neither appealed nor complied with the condemnation orders, and the City served demolition orders on GreenPark on January 16, 2013.  The demolition orders provided that GreenPark should either demolish the condemned units on or before February 1, 2013, or appeal the orders within twenty-one days of service.  On January 18, 2013, the City also issued six Criminal Report Affidavits against Scopelliti based on twenty-four Code violations in six of GreenPark's units.  These six units were not the same units subject to the condemnation orders.  Criminal proceedings against Scopelliti were stayed pending the outcome of the instant suit.

GreenPark did not meet the demolition deadline for the nine condemned units, and the City hired a private company to conduct the demolition. The company began demolition on February 4, prior to the expiration of GreenPark's appeal deadline.  That same morning, GreenPark served the CEB with a cease and desist letter, and the City halted demolition and vacated the property.  The roof of one unit was removed before demolition ceased.

On March 13, 2013, a CEB Special Magistrate held a hearing regarding GreenPark's appeal of the demolition orders.  The Special Magistrate concluded that the City had: 1) properly applied the Code; 2) followed all required procedures and provided GreenPark proper notice; 3) issued demolition orders supported by facts shown in the inspection reports, files, and photographs in the record; and 4)

4

that the expert reports submitted by GreenPark were insufficient to overturn the demolition orders.  The Special Magistrate affirmed the demolition orders as valid and enforceable.  GreenPark subsequently filed a complaint with the district court.

B. *Procedural History*

GreenPark filed its complaint with the district court on April 22, 2014, alleging fifteen claims against the City.  The parties' scheduling order set the close of discovery for April 1, 2015.  On March 30, 2015, GreenPark filed a motion to extend the deadlines for discovery and dispositive motions.  Upon review of GreenPark's motion, the magistrate judge described GreenPark's complaint as the "epitome of a 'shotgun' pleading," and noted the difficulty defense counsel and the court would have in disposing of GreenPark's claims on summary judgment.  The magistrate judge issued a report and recommendation that the complaint should be dismissed with leave to file an amended complaint.

The district court rejected the magistrate's report and recommendation.  The district court noted that GreenPark had failed to request leave to amend its complaint for an entire year, seeking leave to amend only after the magistrate judge's report.  The district court indicated that permitting GreenPark to amend its complaint would prejudice the City's ability to file a motion for summary judgment based on the original complaint.  GreenPark subsequently voluntarily dismissed eight counts from its complaint, and the City filed its motion for

5

summary judgment on the remaining counts.  The district court granted the City's

motion for summary judgment based on the fact that the inverse condemnation

claim was not yet ripe and GreenPark failed to present evidence in support of its

remaining claims.  GreenPark subsequently perfected this appeal.

## II. STANDARD OF REVIEW

"We review a district court's grant of summary judgment de novo, viewing

the record and drawing all factual inferences in a light most favorable to the

nonmoving party."  *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d

1277, 1284 (11th Cir. 2014) (internal quotation marks omitted). Questions

concerning ripeness are also reviewed de novo.  *Elend v. Basham*, 471 F.3d 1199,

1203 (11th Cir. 2006).  We review for an abuse of discretion "[a] district court's

decision to grant or deny leave to amend" a complaint.  *Jennings v. BIC Corp.*, 181

F.3d 1250, 1254 (11th Cir. 1999).

## III.  DISCUSSION

A. *Inverse Condemnation*

The district court correctly found that GreenPark's inverse condemnation

claim was not ripe for adjudication.  GreenPark's claim seeks just compensation

for the City's invasion of its property and partial demolition of its unit.  "In order

for such a claim to be ripe for adjudication, the landowner must overcome two

hurdles: the final decision hurdle and the just compensation hurdle."  *Reahard v.*

6

*Lee Cnty.*, 30 F.3d 1412, 1415 (11th Cir. 1994) (internal quotation marks omitted).[1]

GreenPark failed to meet the just compensation hurdle, which "boils down to the rule that state courts always have a first shot at adjudicating a takings dispute because a federal constitutional claim is not ripe until the state has denied the would-be plaintiff's compensation." *Agripost, LLC v. Miami-Dade Cnty., Fla.*, 525 F.3d 1049, 1052 (11th Cir. 2008) (discussing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S. Ct. 3108 (1985)); *see also Reahard*, 30 F.3d at 1417.   GreenPark did not avail itself to Florida's inverse condemnation cause of action and therefore cannot claim that it has been denied just compensation.  The district court properly found that GreenPark's claim is not ripe for adjudication.

*B.  Fair Housing Act*

GreenPark alleged that the City's enforcement of the Code has a disparate and adverse impact upon African-Americans in violation of the FHA.  To establish a prima facie case for disparate impact, GreenPark must provide some comparative evidence to show that enforcement of the Code results in a disparate impact on African-Americans.  *See Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1218

---

[1] GreenPark argues that because the final decision hurdle is met, the claim is ripe to exercise supplemental jurisdiction for the purpose of determining just compensation.  This argument is without merit, as it clearly misapprehends the just compensation inquiry.

7

(11th Cir. 2008) (upholding summary judgment on a disparate impact claim where the plaintiff failed to present relevant comparative evidence). GreenPark provided statements from two witnesses that the "goal of the city was to remove African-Americans from the neighborhood" and allegations of discriminatory statements made by City representatives in connection with Code enforcement activities. GreenPark's expert reports referenced other mobile home parks in the area in similar states of disrepair and opined that lack of "similar action against similar parks" was the result of selective enforcement against GreenPark.[2]

GreenPark argues that the evidence of the City's discriminatory animus and singling out of GreenPark is sufficient to create a dispute of fact as to disparate impact on African-Americans. This argument overlooks GreenPark's burden to establish a prima facie case, as "there can be 'no genuine issue as to any material fact,' [where] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986). At best,

---

[2] The Bodziak report stated the following:

> In the surveying area we quickly found two other trailer parks. . . . Both were comparable to GreenPark and in my opinion of equal and similar states of dis-repair. Lack of similar action against similar parks in more visible locations was not taken, leading me to the opinion that selective enforcement may have been the basis for singling Greenpark out of actions taken . . . .

The Jamaal Engineering report identified several similar properties, noted that their conditions were poor or similar to that of Greenpark, and that there were no demolition orders evident for these similar units.

8

GreenPark's evidence shows disparities in the treatment of mobile home units. "[S]imply showing that a few houses are affected by an ordinance does not come close to establishing a disparate impact." *Schwarz*, 544 F.3d at 1218. GreenPark provided no evidence that the City's enforcement of the Code affected African-Americans as opposed to any other race, and therefore failed to establish a prima facie case for disparate impact. *See id.* We therefore affirm the district court's grant of summary judgment on the disparate impact claim.

C. *Selective Enforcement*

GreenPark's selective enforcement claim is similarly deficient. To establish a claim for selective enforcement, "[GreenPark] must show (1) that [it was] treated differently from other similarly situated individuals, and (2) that [the City] unequally applied a facially neutral ordinance for the purpose of discriminating against [GreenPark]." *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006) (citing *Strickland v. Alderman*, 74 F.3d 260, 264 (11th Cir. 1996)). In order for comparator properties to be considered similarly situated, a plaintiff must make a specific showing that the two properties are "prima facie identical in all relevant respects." *Campbell*, 434 F.3d at 1315. The expert reports submitted by GreenPark, *see supra* note 2, fail to provide any relevant or specific details as to how the comparator properties were similarly situated to GreenPark—i.e., whether the identical violations were present or whether the City failed to enforce identical

9

violations at these properties. GreenPark argues that whether the properties were similarly situated is a question for a jury, and again conflates its burden at the pleading stage with the existence of an issue of fact. GreenPark failed to establish its prima facie case for selective enforcement, and summary judgment was proper on this claim.

### D. *Abuse of Process*

"A cause of action for abuse of process requires: (1) an illegal, improper, or perverted use of process by the defendant; (2) an ulterior motive or purpose in exercising the illegal, improper, or perverted process; and (3) damage to the plaintiff as a result of the defendant's action." *Valdes v. GAB Robins N. Am., Inc.*, 924 So. 2d 862, 867 n.2 (Fla. Dist. Ct. App. 2006). "The abuse consists not in the issuance of process, but rather in the perversion of the process after its issuance." *Peckins v. Kaye*, 443 So. 2d 1025, 1026 (Fla. Dist. Ct. App. 1983). "There is no abuse of process, however, when the process is used to accomplish the result for which it was created, regardless of an incidental or concurrent motive of spite or ulterior purpose." *Bothmann v. Harrington*, 458 So. 2d 1163, 1169 (Fla. Dist. Ct. App. 1984).

In the complaint and response to the motion for summary judgment, GreenPark contended that the City committed an abuse of process by *issuing* six Criminal Report Affidavits in order to coerce GreenPark to abandon their

challenges to the City's Code enforcement.  Because GreenPark challenged the issuance of the Criminal Report Affidavits and not any improper act after the prosecution began, the district court correctly found GreenPark's abuse of process claim invalid as a matter of law.  *See Peckins*, 443 So. 2d at 1026–27.  On appeal, GreenPark now alleges that the City took improper action after the issuance of the Criminal Report Affidavits "to leverage the threat of incarceration of Scopelliti . . . with obtaining GreenPark's acquiescence to demolition . . . [and] obtaining from GreenPark a waiver of GreenPark's rights to process in relation to its civil claims and defenses." We conclude that this argument has been waived for two reasons. First, GreenPark failed to raise this argument to the district court.  *See, e.g.*, *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).  Second, GreenPark fails to cite to any portion of the record that would support the City's alleged improper acts after the issuance of the Criminal Report Affidavits.  *See Nat'l Aliance for Mentally Ill, St. Johns Inc. v. Bd. of Cnty. Comm'rs of St. Johns Cnty.*, 376 F.3d 1292, 1296 (11th Cir. 2004) (deeming claims waived for appellant's failure to cite to the parts of the record on which it relied in accordance with Fed. R. App. P. 28(a)(8)(A)).  We therefore affirm the district court on this claim.

*E.  Motion to Amend Complaint*

11

A district court has discretion to deny leave to amend, but "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "In making this determination, a court should consider whether there has been undue delay in filing, bad faith or dilatory motives, prejudice to the opposing parties, and the futility of the amendment." *Local 472 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada v. Ga. Power Co.*, 684 F.2d 721, 724 (11th Cir. 1982) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)). GreenPark's request to amend was filed after the case had been pending for a year and at the close of the discovery deadline. GreenPark had ample opportunities to seek leave to amend its complaint during that year. In denying GreenPark's request, the district court cited prejudice to the City, who was prepared to file a motion for summary judgment based on the original complaint. Accordingly, we conclude from the record that the district court did not abuse its discretion in denying GreenPark's request to amend.

F.  *Section 1983 Claims*

GreenPark argues that the district court committed reversible error by entering a final judgment without addressing Count IV[3] of its complaint, Scopelliti's individual claim for violation of his due process rights under §1983.

---

[3] GreenPark's brief refers to Counts XII and XIII interchangeably as "Scopelliti's §1983 Civil Rights Claims." Those counts correspond to GreenPark's Abuse of Process and Trespass claims, respectively. We glean from the complaint, the district court's order, and the City's brief that this is a typo, and GreenPark intended to refer this court to Count IV.

12

GreenPark's complaint alleged two separate §1983 claims, one by GreenPark and the other by Scopelliti, individually.  The district court cited both counts under the same heading preceding six pages of analysis of GreenPark's due process claim (Count III).  The district court's order never explicitly made a finding as to whether the City was entitled to summary judgment on Scopelliti's individual due process claim.  Even so, we review the grant of summary judgment de novo and "may uphold a grant of summary judgment on any basis supported by the record." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (internal quotation marks omitted).

First, we note that insofar as Count IV addresses the premature demolition of GreenPark's units, these due process claims were thoroughly analyzed and properly dismissed in the district court's order.  Accordingly, we need only address GreenPark's allegations that Scopelliti was denied procedural due process in regard to the City's issuance of the Criminal Report Affidavits.  GreenPark argues that Scopelliti was not provided adequate notice of the alleged violations or an opportunity to remedy the violations prior to the City initiating criminal proceedings against him.  Those criminal proceedings were stayed pending the outcome of the instant suit.

"A procedural due process claim has three elements: '(1) a deprivation of a constitutionally-protected liberty or property interest; (2) [government] action; and

(3) constitutionally-inadequate process.'" *Alvarez v. U.S. Immigration & Customs Enforcement*, 818 F.3d 1194, 1228 (11th Cir. 2016) (alteration in original) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)).  Even assuming that GreenPark has met its burden on the first two elements, GreenPark failed to show that Scopelliti was denied a constitutionally adequate remedy by the state court. "It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim." *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000).   Here, GreenPark provided no evidence that Scopelliti challenged in the state court the issuance of the Criminal Report Affidavits.  Further, remedy from the state court is still available where the criminal proceedings remain pending. Regardless, where GreenPark has neither alleged that there are no adequate remedies available to Scopelliti or pled facts that indicate Scopelliti attempted to take advantage of any state remedies and was denied, there is no viable due process claim under §1983.  *See, e.g.*, *Horton v. Bd. of Cnty. Comm'rs of Flagler Cnty.*, 202 F.3d 1297, 1301 (11th Cir. 2000).

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment in favor of the City.

AFFIRMED.

14