[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10086
Non-Argument Calendar
_____

D.C. Docket No. 4:14-cv-10071-JLK


RICHARD E. WARNER,
as Co-Personal Representatives of the Estate of Joseph Ardolino II,
JOHN W. PARENTE,
as Co-Personal Representatives of the Estate of Joseph Ardolino II,
JOSEPH E. ARDOLINO,
individually,

                                          Plaintiffs - Appellants,

versus

CITY OF MARATHON,
a political subdivision of the State of Florida,
MICHAEL CINQUE,
individually and as a City of Marathon Official,
RALPH LUCIGNANO,
individually and as a City of Marathon Official,
THE STUFFED PIG, INC.,
a Florida corporation,
CVS, INCORPORATED,

                                          Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 8, 2017)

Before TJOFLAT, WILLIAM PRYOR, and JORDAN, Circuit Judges.

PER CURIAM:

Richard E. Warner and John W. Pariente—co-personal representatives of the Estate of Joseph Ardolino II—and Mr. Ardolino's son, Joseph E. Ardolino, appeal the district court's order dismissing their Third Amended Complaint against the City of Marathon, Michael Cinque, Ralph Lucignano, the Stuffed Pig, Inc., and CSV, Inc., as well as the district court's order denying their motion for reconsideration. Upon review of the record and the parties' briefs, we affirm in part, vacate in part, and remand with instructions to the district court.

**I**

Because we write for the parties, we assume their familiarity with the underlying record and set out only what is necessary to resolve this appeal. We set out the facts as set forth in the Third Amended Complaint. We accept the allegations in the complaint as true, and construe them in the light most favorable to the plaintiffs. *See Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009).

2

**A**

The underlying complaint in this case is centered on a property known as the Overseas Property, which was owned by Mr. Ardolino before he passed away in 2005.  The property operated as a package liquor store and cocktail lounge, and housed rental apartments.  It is located in Marathon, Florida.

When Mr. Ardolino passed away, his Estate became the sole owner of the property and its liquor license.  Until 2008, the Estate leased the property.  The Estate then attempted to improve the property, lease it, and sell it.  The Estate hired a real estate agent, Brenda Tarella, to help sell the property.

In March of 2009, Ms. Tarella contacted the City's Planning Director to ask whether the property had any encumbrances, particularly with regard to the property's intended uses as a package liquor store and lounge.  Unbeknownst to the Estate, the City had passed an ordinance in October of 2006 which prohibited the sale of package liquor within 1,500 feet of any school or existing package liquor store.  The property purportedly operated the only package liquor store that fit this description.

In response to Ms. Tarella's inquiry, the City allegedly did not communicate that the property was subject to the ordinance.  Instead, the City allegedly submitted a letter detailing the property's transferable building rights without mention of the ordinance.

3

In September of 2009, the Estate received a $1 million offer from interested buyers to purchase the property and its license. The buyers ultimately withdrew their offer after the property was appraised. The same buyers later offered the Estate $500,000 for the property, which the Estate declined.

Thereafter, in June of 2011, the Estate received a $750,000 offer for the property. It was then that the Estate found out about the zoning limits on the property from the City's Planning Director. The Planning Director drafted a letter in July of 2011 stating that the property's use as a lounge and liquor package store did not conform to the City's land regulations, and asserting that because the property had not been operating as a lounge, it had also lost certain use rights. As a result, the property could not be used as a package store or liquor lounge. Nevertheless, the City stated that the package store could be reestablished through a variance and the liquor license could also be reobtained. The $750,000 offer was ultimately withdrawn.

The Estate objected to the letter's assertions and claimed that it had received no notice of the ordinance. The Estate's efforts to contest the City's prohibitions on the property led it through the City's administrative appeals process and ultimately to a Florida circuit court on a writ of certiorari. The Florida court ultimately granted the Estate relief and reversed the application of the ordinance as to the property in June of 2012.

The property was eventually sold in 2013 for $475,000, but not without alleged interference from the City.  The City purportedly interfered with the sale of the property by asserting administrative challenges and filing a title objection.  As a result, the Estate sought relief in the probate court, where it was successful.

According to the Estate and Mr. Ardolino's son (the plaintiffs), after Mr. Ardolino's passing, City building officials repeatedly trespassed on the property and harassed the Estate's staff, completed inspections and "red-tagged" the property without warning or justification. They also contacted the Florida Department of Alcoholic Beverage & Tobacco to allegedly interfere with the Estate's license.[1]

**B**

In August of 2014, the plaintiffs filed suit in state court against the City of Marathon, Mr. Cinque, Mr. Lucignano, the Stuffed Pig, Inc., and CSV, Inc., alleging several causes of action.[2]   The case was removed to federal court upon the City of Marathon's motion.  After two amendments to their complaint, the plaintiffs filed the Third Amended Complaint, which is at issue here.

---

[1] The complaint also alleges that a sewer line was improperly built across the property.  Because the facts related to the sewer line are not central to this appeal or our determination, we do not discuss them here.

[2] The Stuffed Pig is a business adjacent to the property.  Mr. Cinque allegedly has an interest in The Stuffed Pig.  Similarly, CSV is a company that owns a trailer park near the property, which Mr. Cinque also has an interest in.  Mr. Cinque is purportedly the "owner or manager" of The Stuffed Pig and the trailer park property.

The Third Amended Complaint generally alleges that Mr. Cinque and Mr. Lucignano, who were City officials for portions of the relevant period, conspired with the City to negatively impact the value of the property so as to discourage potential buyers from purchasing the property for Mr. Cinque and Mr. Lucignano's private benefit.  Mr. Cinque allegedly served on the City's Planning Commission and City Council from 2006 to 2013.  At some point, Mr. Cinque also served as mayor.  Similarly, Mr. Lucignano allegedly served as a member of the City's Planning Commission from 2009 to 2014.  The plaintiffs brought claims against Mr. Cinque and Mr. Lucignano in their individual capacities and as city officials.

The Third Amended Complaint asserted several claims: an as applied takings claim against the City (Count I); a 42 U.S.C. § 1983 claim against the City (Count II); a § 1983 claim against Mr. Cinque (Count III); a § 1983 claim against Mr. Lucignano (Count IV); a tortious interference with contract rights claim against the City, Mr. Cinque, and Mr. Lucignano (Count V); a tortious interference with advantageous business relationships claim against the City, and against Mr. Cinque and Mr. Lucignano "for conspiring to do so" (Count VI); trespass and unjust enrichment claims against Mr. Cinque, CSV, and the Stuffed Pig (Count VII); a conspiracy claim against the City, Mr. Cinque, and Mr. Lucignano (Count VIII); and a negligence claim against the City under Fla. Stat. § 768.28 (Count IX).

6

All of the defendants filed motions to dismiss the Third Amended Complaint. The district court dismissed the complaint with prejudice after conducting a hearing. In its order, the district court stated that "[e]ven a cursory review reveals that the Complaint runs afoul of Rule 8," D.E. 67 at 6, and provided substantive reasons for dismissing each of the claims. The plaintiffs filed a motion for reconsideration, which the district court denied. This appeal followed.

## II

We review *de novo* the district court's grant of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See Leib*, 558 F.3d at 1305. We review a district court's denial of a motion for reconsideration for an abuse of discretion. *See Sanderlin v. Seminole Tribe of Fla.*, 243 F.3d 1282, 1285 (11th Cir. 2001).

## III

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

On appeal, the plaintiffs contest the district court's dismissal of Counts I, II, III, IV, V, and VIII of the complaint.  We address their arguments in turn.

**A**

The plaintiffs first argue that the district court erred in dismissing their takings claim.  The district court dismissed Count I of the complaint on the ground that the claim was not ripe, and that the actions challenged did not deprive the Estate of all or substantially all of the property's beneficial use.  We review the district court's ripeness determination *de novo*.  *See Reahard v. Lee Cty.*, 30 F.3d 1412, 1415 (11th Cir. 1994).[3]

The plaintiffs assert that the district court erroneously dismissed their claim on ripeness grounds because they availed themselves of administrative and state court remedies, as indicated by the district court's reference to their use of post-deprivation remedies in dismissing their procedural due process claims.  And they argue it would have been futile for them to seek a variance in any event.  They also argue that they should have the opportunity to demonstrate that the rezoning of the property affected the property's value.

---

[3] Count I also appears to assert a takings claim under Article X § 6 of the Florida Constitution and a procedural due process claim.  Although we dismiss Count I on ripeness grounds, we note that we disapprove of this type of drafting.  *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015) ("The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief.").

A federal court has jurisdiction to review a federal takings claim for money damages stemming for a regulatory taking of property when the plaintiff can establish that (1) "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue," *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), and (2) there is no adequate state remedy to obtain just compensation, or an adequate remedy exists but the plaintiff has been denied relief, *see id*. at 194–95. *See also Reahard*, 30 F.3d at 1415–17. As a result, "for [a just compensation] claim to be ripe for adjudication, the landowner must overcome two hurdles: the final decision hurdle and the just compensation hurdle." *See id*. at 1415 (internal citations omitted).

To the extent the plaintiffs assert that they can overcome the final decision hurdle required to bring a takings claim in federal court, we agree that their state court victory, which nullified the application of the ordinance to the property, is a "final decision" for ripeness purposes. Although in most cases a "final decision" has not been reached "until an aggrieved landowner has applied for at least one variance," *Reahard*, 30 F.3d at 1415, we conclude that the Estate effectively sought a variance through the City's appeals processes and its state court action.

The plaintiffs cannot, however, overcome the just compensation hurdle. They did not allege in their complaint that Florida fails to provide an adequate

procedure to obtain just compensation—nor could they.  Florida *does* provide an adequate procedure to obtain monetary relief through an inverse condemnation claim.  *See Joint Ventures, Inc. v. Dep't of Transp.*, 563 So. 2d 622, 627 (Fla. 1990) ("Inverse condemnation affords the affected property owner an after-the-fact remedy, when there has already been a 'taking' by regulation . . . .").  *See also Reahard*, 30 F.3d at 1417 (explaining that Florida courts have recognized an inverse condemnation remedy since 1990).   The plaintiffs also did not allege in their complaint that they availed themselves of this remedy and were denied relief. Instead, the plaintiffs seem to assert on appeal that the takings claim presented in their complaint *is* their just compensation claim.  Notwithstanding the possibility that they were attempting to assert an inverse condemnation claim in Florida state court before the case was removed to federal court, we cannot review the claim until the plaintiffs have been denied relief by a Florida court.  We therefore vacate the district court's order as it relates to Count I with instructions to dismiss the claim without prejudice for lack of subject-matter jurisdiction.  *See Ga. Advocacy Office, Inc. v. Camp*, 172 F.3d 1294, 1299 (11th Cir. 1999) (explaining that a dismissal on ripeness grounds is not an adjudication on the merits).

## B

The plaintiffs next seem to argue that the district court improperly dismissed their § 1983 claims (Counts II–IV).  The district court ruled that they improperly

pled their claims because they included "at least four distinct causes of action . . . in each count." D.E. 67 at 7. Notwithstanding this appropriate basis for dismissing these claims, the district court made substantive rulings as to each of the perceived claims. The plaintiffs do not contest the district court's substantive rulings and instead argue that the way they presented their claims was permissible under the Federal Rules of Civil Procedure, and seek the opportunity to re-plead if their alleged errors were merely technical.[4]

The plaintiffs' failure to contest the substantive bases for the district court's dismissal of their § 1983 claims is fatal. "To obtain reversal of a district court judgment that is based on multiple, independent grounds, an appellant must convince us that every stated ground for the judgment against him is incorrect." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). As a result, the district court's judgment as to Counts II–IV must be affirmed. *Id*.

Moreover, we agree with the district court's evaluation of the complaint. Counts II–IV suffer from defects often criticized as emblematic of a "shotgun" pleading. *See, e.g., Weiland*, 792 F.3d at 1321–23 (explaining the types of shotgun pleadings). Counts II–IV disregard Federal Rule of Civil Procedure 10(b)'s preference that discrete claims be pled in separate counts when doing so would

---

[4] The plaintiffs also cite to the Federal Rules of *Criminal* Procedure to argue that they should be able to allege claims against multiple defendants in a single count. Aside from the fact that this is a *civil* case, Counts II–IV did not present claims against multiple defendants within each count, nor did the district court dismiss the claims on that basis, so we do not address this argument.

facilitate the clear presentation of the issues, as it would here.    As currently drafted, it is difficult to discern which allegations refer to which claims.  Counts II–IV also inappropriately incorporate certain preceding counts.  We have rejected these drafting techniques before and do so here as well.  *See id.  See also Anderson v. Dist. Bd. of Trustees of Cent. Florida Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.").

## C

The plaintiffs also argue that the district court erroneously dismissed their tortious interference with contract rights claim (Count V) on absolute immunity grounds.  Specifically, they argue that Mr. Lucignano was not a public official when the property was rezoned and when the conspiracy between Mr. Cinque[5] and Mr. Lucignano began, so absolute immunity cannot apply to him.[6]

---

[5] The plaintiffs do not challenge the district court's rulings that Mr. Cinque and the City are immune from suit under absolute immunity principles, so we consider any issue related to the district court's immunity holdings as to these two defendants abandoned. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("Any issue that an appellant wants the Court to address should be specifically and clearly identified in the brief.").  Similarly, we note that the district court also dismissed Count VI on absolute immunity grounds, but the plaintiffs did not present argument as to Count VI. *See id.*

[6] The plaintiffs also present arguments about qualified immunity, but the district court did not rely on qualified immunity to dismiss any claim.  Similarly, the plaintiffs present arguments

12

We cannot evaluate whether absolute immunity applies to Mr. Lucignano because the plaintiffs have effectively failed to argue the doctrine's inapplicability. Count V alleges that the City, Mr. Cinque, and Mr. Lucignano interfered with the $1 million and $750,000 offers the Estate received from potential buyers to purchase the property. The $1 million offer was allegedly received in September of *2009* and withdrawn shortly thereafter, and the $750,000 offer was allegedly received in June of *2011*. Therefore, the fact that Mr. Lucignano was not a City official when the property was rezoned or when the alleged conspiracy began is irrelevant to the wrongs alleged in Count V. The acts alleged in Count V relate to events that took place when Mr. Lucignano was a City official, and the plaintiffs do not present any argument about why he should not be protected by absolute immunity for those acts. As a result, we affirm. *See Access Now*, 385 F.3d at 1330 ("If an argument is not fully briefed . . . evaluating its merits would be improper . . . .").

**D**

The plaintiffs lastly argue that the district court erred in dismissing Count VIII, which alleged that the City, Mr. Lucignano, and Mr. Cinque conspired to commit the wrongs described in Counts II–VI. The district court dismissed Count

---

about sovereign immunity without connecting their contentions to any of the dismissed claims. We will not guess what the plaintiffs are attempting to take issue with on appeal.

VIII on two bases: (1) the claim was barred by the intracorporate conspiracy doctrine and (2) the underlying claims had been rejected so no conspiracy claim could stand.[7]

On appeal, the plaintiffs argue that the intracorporate conspiracy doctrine is inapplicable because Mr. Lucignano and Mr. Cinque were not City officials from 2006 to 2008. We do not need to decide whether the intracorporate conspiracy doctrine applies because none of the claims underlying the conspiracy claim are viable. "Under Florida law, the gist of a civil conspiracy is not the conspiracy itself but the civil wrong which is done through the conspiracy which results in injury to the Plaintiff." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007) (internal citations and quotation marks omitted). Here, Counts II through IV do not survive, so none can "serve as the basis for a conspiracy claim." *Id*. As a result, we affirm the district court's dismissal of Count VIII.

## IV

We affirm the district court's dismissal of Counts I, II, III, IV, V, and VIII of the Third Amended Complaint. We nonetheless vacate the district court's order as to Count I because it is not yet ripe for review and remand for the district court to issue an order of dismissal as to Count I in accordance with our ruling.

---

[7] The complaint seems to state that Mr. Ardolino's son only alleges a claim against the City, Mr. Lucignano, and Mr. Cinque for conspiring to commit the acts alleged in Counts V and VI. Our ruling is unaffected by this possibility.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**.